# James Fuller, Plff. in Err., v. Alexander Dempster, Admr. of R. D. Beatty, Deceased.

Where a writ is issued within six years from the time the right of action accrued with a return of "*non est inventus*," and an alias is duly issued and served within six years from the first, that will be sufficient to toll the statute of limitations.

Where there is a clause in an agreement of purchase stipulating that if the purchaser is dissatisfied with his bargain at the expiration of one year, the vendor will pay back the purchase money, and the purchaser dies within that time, this privilege of the purchaser's will survive to the purchaser's heirs and legal representatives, especially when there are acts of the vendor in evidence showing that such was his understanding.

(Argued November 1, 1887.　Decided November 11, 1887.)

October Term, 1887, No. 144, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.　Error to the Common Pleas of Allegheny County to review a judgment for plaintiff in an action on the case.　Affirmed.

The facts of the case were as follows:

On November 29, 1875, James Fuller, the defendant below, and plaintiff in error, made an agreement in writing with R. D. Beatty, of which the following is a copy:

Article of agreement, made and entered into the 29th day of November, 1875, between James Fuller, of the city of Philadelphia, and R. D. Beatty, of the city of Pittsburg; Witnesseth, That the said James Fuller, of the first part, agrees to sell the said Beatty, of the second part, 4½ tenths of the Franklin Silver Lode, in Deer Lodge county, and territory of Montana. The said Franklin Lode consists of 1,000 feet in one body, including

NOTE.—The institution of an action within six years tolls the statute of limitations, though the return is nihil. Schlosser v. Lesher, 1 Dall. 411. And such can be continued by the issuance of an alias within six years. McClurg v. Fryer, 15 Pa. 293; Curcier's Estate, 28 Pa. 261. But if the first case is discontinued, it cannot be reinstated. Walker v. Philadelphia, 195 Pa. 168, 78 Am. St. Rep. 801, 45 Atl. 657. Nor can the action be made to relate back to another suit for the same personal injuries against another defendant, so as to prevent the running of the statutory period. Peterson v. Delaware River Ferry Co. 190 Pa. 364, 42 Atl. 955.

Discovery Claim, is situate about 800 feet southeast of the "Speckled Trout," and is in the same general formation.

On this claim are two shafts, one 20 feet deep, the other 50 feet deep both show a well-defined lead, with ore averaging about $160 per ton. The choicest ore will assay from $600 to $1,000 per ton.

The full amount of money to be paid by the said party of the second part for the 4½ tenths is $10,000, for which, when paid, the said party of the first part agrees to make a good and warranty deed for the same.

Also if the said party of the second part, R. D. Beatty, is dissatisfied with his purchase of the said 4½ tenths of the said Franklin Silver Lode at the expiration of one year, from this date, the said James Fuller and Bell C., his wife, agree to pay back the full amount, $10,000, with interest on the same.

Witness:                                    James Fuller.
James Robinson.                            Bell C. Fuller.
                              By Attorney in Fact,
                                    James Fuller.

On the day of the execution of this contract Fuller received from Beatty $4,000 on account of purchase money, and receipted for the same on the written agreement. December 11, 1875, the remaining $6,000 was paid and receipted for on the agreement.

August 12, 1876, R. D. Beatty died intestate, leaving a widow, Nannie C. Beatty, and two minor children. Alexander Dempster was subsequently appointed administrator of Beatty's estate.

June 3, 1882, Dempster, as administrator of R. D. Beatty, deceased, sued out a writ in assumpsit, returnable to the first Monday of June, 1882. This writ was returned *n. e. i.*—as was an alias summons returnable to first Monday of November, 1886. A *pluries* summons to first Monday of February, 1887, was returned served.

The plaintiff, in his affidavit of claim and declaration, alleged that shortly after the death of Beatty, Fuller promised the widow and administrator to take back the land and apply the purchase money to the payment of the Woods mortgages, and the widow and administrator so testified; this Fuller wholly denied, and he also proved that, after he had resigned the guardianship,

and after Bigelow had been appointed, he did, February 14, 1887, execute a deed of conveyance to Beatty's heirs, and tendered the same to the guardian.

At the trial it was contended, on behalf of the defendant, that the right of Beatty to express dissatisfaction with the bargain and rescind the same was personal to him, and did not survive to his heirs or personal representatives; that in any event, such right did not devolve upon the widow and administrator; that the pretended agreement between Fuller and the widow and administrator was without consideration, and is void under the statute of frauds, and that the service of the writ of January 14, 1887, did not avail to bar the statute of limitations.

The court permitted the case to go to the jury on the question whether Fuller promised and agreed with the widow and administrator, after the death of Beatty, to repay the purchase money and to apply it to the payment of the Woods mortgage, and reserved the questions of law arising upon defendant's prayer for instructions.

The jury found for the plaintiff $14,710, and also found the following facts:

1. That under the contract of November 27, 1875, Beatty paid the consideration in full, $10,000; but no deed for the property was delivered or tendered to him during his lifetime and none was tendered until after the bringing of this action.

2. That Beatty died August 12, 1876, intestate, leaving a widow and two minor children. Alexander Dempster was appointed administrator of the estate, and the defendant, in the fall of 1877, was appointed guardian of the minor children.

3. That Beatty, during his life, never expressed to Fuller any dissatisfaction with his purchase. After his death, before, and at the time of the expiration of the year from the date of the contract, the administrator, and the widow, on behalf of herself and minor children who then had no guardian, did express to the defendant their dissatisfaction with the purchase, and demanded the return of the purchase money. .

4. That upon such specification the defendant did agree to refund the purchase money received under the contract.

This verdict is subject to the opinion of the court on the questions of law reserved,—to wit, whether, under the record and pleadings in this cause, and under the said contract and the fore-

going facts, the plaintiff is entitled to recover. If the court should decide these questions of law in favor of the plaintiff, then judgment to be entered on the verdict for plaintiff; otherwise judgment to be entered for defendant, *non obstante veredicto.*

WHITE, J., after argument, filed the following opinion of the court, on the questions of law reserved:

The writ was issued within six years from the time right of action accrued, and an alias duly issued and served within six years from the first. Although the alias was not served until more than six years from the time the right of action accrued, the statute of limitations is not a good defense. McClurg v. Fryer, 15 Pa. 293; Hemphill v. McClimans, 24 Pa. 367; Curcier's Estate, 28 Pa. 261.

The main contention arises on the clause in the agreement between James Fuller and R. D. Beatty: "If the said party of the second part, R. D. Beatty, is dissatisfied with the purchase of the said 4½ tenths of the said 'Franklin' Silver Lode, at the expiration of one year from this date, the said James Fuller, and Bell C., his wife, agree to pay back the full amount, $10,000, with interest on the same."

Is that a personal privilege to R. D. Beatty, which ceased to exist when he died, when he died within the year? Or did it survive to his heirs or legal representatives?

As an abstract question of law, based upon the agreement alone, it is not easy of solution. But I think this defendant has put a construction upon it which relieves the case from difficulty.

The parties were brothers-in-law. The agreement of November 29, 1875, is very brief and informal for the amount of money involved. Evidently the parties had entire confidence in each other, and that Beatty thought the provision about the return of the money was ample to protect him in any event. It is not likely either contemplated the contingency of the other's death. Perhaps if that had been suggested, both would have said, the agreement binds each of us and our legal representatives; for both were laymen, and there is nothing in the agreement inconsistent with that idea.

As a general rule, all covenants in an agreement, in case of the party's death, become binding upon his legal representatives without their being named. So, as a general rule, all privileges

or advantages granted the other party descend to his heirs or legal representatives without their being expressly named.

To take a case out of this general rule there would be some peculiarity in the circumstances, or the language used, to show that such was the intention of the parties.

I see nothing in this case to indicate such an intention. To give a strict, technical construction to the word "dissatisfied" and limit it to R. D. Beatty, would destroy the mutuality of the agreement, deprive Beatty of the most essential part of it, and make it a contract which might be most disastrous to his estate. He might have died one day after the agreement was signed. The stock might have been worthless; yet Dr. Fuller could have kept the $4,000 he had, and collected the remaining $6,000, and Beatty's estate been without remedy. Beatty had one year in which to investigate the matter and determine whether he would keep the stock or demand the return of his money. It is very unreasonable to say that if he died before he had time to investigate or determine, that privilege should not be exercised by his heirs or representatives. Certainly, he never understood the agreement in that light.

Nor did his representatives, after his death, or Dr. Fuller, so understand it. The jury have found that after the death of Beatty, "before, and at the time of the expiration of the year from the date of the contract, the administrator, and the widow on behalf of herself and minor children who then had no guardian, did express to the defendant their dissatisfaction with the purchase, and demanded the return of the purchase money." And they further found "that upon such notification the defendant did agree to refund the purchase money received under the contract."

This notification was given, and demand made, in pursuance of and under this agreement. When thus notified, and the demand made, the defendant agreed to refund the money. That, I think, was a virtual admission by Dr. Fuller that the administrator and widow had a right, under the contract, to give that notice and make that demand. It was his construction of the contract. It was tantamount to saying: "Mr. Beatty and I so understood it."

It was not a voluntary promise to refund money which he was under no obligation to refund. Such a promise, being without consideration, would have had no legal validity. It was a

promise to refund what he believed he was legally bound to refund. The promise, however, is not the foundation of this suit. The suit is on the agreement with Beatty, and this promise is only important to show, with the other facts, what he understood and admitted was the true construction of the agreement with Beatty.

In this view of the case there is no difficulty on another point pressed at the trial, and on the argument on the reserved question, *viz.,* that Beatty's interest in the Silver Lode, being real estate, descended to his children, and neither the widow nor administrator could give it up without their consent. Beatty never had any deed for the interest, and no deed back was necessary if the administrator had the right to disaffirm the contract and require the return of the money. If he had that right as administrator, whether he acted properly or not would be a question for the orphans' court on settlement of his account.

The administrator is the legal representative of R. D. Beatty, and the suit is properly brought in his name.

And now, July 6, 1887, after argument and consideration of the questions of law reserved, as stated in the special findings of the jury, they are decided in favor of the plaintiff; and it is ordered that judgment be entered for the plaintiff on the verdict, on payment of the verdict fee.

Defendant then took this writ assigning for error:

1. The court erred in not affirming the defendant's first point, which was as follows:

"That the provision in the contract of November 29, 1875, giving R. D. Beatty the right to express dissatisfaction with the purchase and demand a repayment of the purchase money with interest, did not descend to or vest in the administrator or widow of said Beatty, but was a privilege personal in Beatty, and that as he had not been shown to have became dissatisfied, or to have exercised said privilege, the plaintiff cannot recover under the terms of the said agreement."

*Ans.* This point refused *pro forma,* in order to get the verdict of the jury on the question of fact in dispute; but it is embraced in the question of law reserved, and will be considered hereafter if the verdict should be for the plaintiff.

2. The court erred in not affirming the defendant's second point, which was as follows:

"That the plaintiff has not shown that Dr. Fuller received or enjoyed any consideration for the subsequent promise imputed to him by plaintiff's witnesses; and hence the plaintiff cannot recover in this action." (Same answer as to first point.)

3. The court erred in not affirming the defendant's fourth point, which was as follows:

"That by virtue of the agreement of November 29, 1875, and the payment of the purchase money therein called for, there was vested in R. D. Beatty an interest or estate in the Montana mining property, which said estate or interest descended at the time of Beatty's death to and became vested in the heirs, and that it was not within the power of the administrator and widow of said Beatty and of Fuller, the defendant, to devest said estate from and out of the heirs by the alleged agreement between said Fuller and said administrator and widow, and that therefore the plaintiff is not entitled to recover in this action." (Same answer as to first point.)

4. The court erred in not affirming the defendant's sixth point, which was as follows:

"That as the record shows that the writ served on the defendant in the present action was sued out after more than six years from the time of the alleged breach of said alleged contract the action is barred by the statute of limitations, and the plaintiff cannot recover in this action." (Same answer as to first point.)

5. The court erred in qualifying the defendant's fifth point, which was as follows:

"That the alleged promise by Fuller to pay the mortgage debt of Beatty's estate to Emily Wood, being a promise to pay an existing debt of another, and not being expressed in writing signed by said Fuller, was void under the statute of frauds, and the plaintiff cannot recover in this action."

*Ans.* This point is affirmed, unless the jury find that the defendant agreed to refund the $10,000 under the contract of November 29, 1875, and that the payment of the mortgage was simply the mode of refunding the money.

6. The court below erred in deciding the reserved question in favor of the plaintiff, and in entering judgment on the verdict in favor of the plaintiff.

7. The court below erred in not entering judgment on behalf of the defendant on the reserved question *non obstante veredicto.*

*George Shiras, Jr.,* for plaintiff in error.—By the terms of the contract, Beatty was appointed as the sole judge of his own state of mind, and Fuller could not appeal to a court or jury to revise or overrule Beatty in his exercise of the reserved power. But it is equally true that Beatty could not, by an act of voluntary assignment or transfer, give to a third party the right to express or declare dissatisfaction with Beatty's purchase. Nelson v. Von Bonnhorst, 29 Pa. 352.

The legal assignment or transfer of Beatty's ownership in the land, caused by his death, did not change the contract nor substitute for Beatty's dissatisfaction with his purchase, which was the expressed condition of his right to rescind, the preference of his administrator or of his widow to have the money instead of the land. The right to revise his judgment in making the purchase was personal to Beatty, and incommunicable to others.

Ibid.; Barnard v. Cushing, 4 Met. 232, 38 Am. Dec. 362. See also Robson v. Drummond, 2 Barn. & Ad. 303; Zaleski v. Clark, 44 Conn. 218, 26 Am. Rep. 446; Brown v. Foster, 113 Mass. 136, 18 Am. Rep. 463; Singerly v. Thayer, 108 Pa. 291, 56 Am. Rep. 207, 2 Atl. 230; Gibson v. Cranage, 39 Mich. 49, 33 Am. Rep. 351; Ellis v. Mortimer, 1 Bos. & P. N. R. 257.

The learned judge missed the point in saying that an alias writ, whenever issued, keeps the suit alive. The very cases he cites show the contrary. They hold that where an alias is issued within six years of the issuance of the first writ, and served, it is regarded as a continuation of the original. Jones v. Orum, 5 Rawle, 249; McClurg v. Fryer, 15 Pa. 295; Curcier's Estate, 28 Pa. 262.

*Bruce & Negley* and *D. T. Watson,* for defendant in error.— Was this a personal contract and of such a legal nature that on the death of Beatty his administrator had nothing to do with it?

"It is a presumption of law in the cases of specialties and simple contracts, that the parties bind not only themselves but their personal representatives also, and that such parties are to sue on the agreement, although they be not mentioned therein, for death is in general no revocation of an agreement, but it may, unless it be a personal engagement to be performed by the testator himself only, and requiring his personal skill or taste, be completed by his executors." Chitty, Contr. p. 98. See

also 1 Addison, Contr. p. 639; and Siboni v. Kirkman, 1 Mees. & W. 423.

Of course, under the law relating to the mutuality of contracts, where the personal representatives are not responsible, on account of its being a personal contract, the other party is also released. See cases cited by plaintiff in error.

But the case at bar has not a single characteristic of a personal contract; there was no special intellectuality, taste or skill involved in the matter.

The plaintiff in error also claims the statute of limitations as a defense to our action, and cites the cases of Curcier's Estate, 28. Pa. 262; Jones v. Orum, 5 Rawle, 249; and McClurg v. Fryer, 15 Pa. 295.

But the facts of these cases differ materially from the present one.

In McClurg v. Fryer, COULTER, J., says: "The institution of the alias summons lifted away or tolled the bar of the statute of limitations. The alias suit was instituted within six years of the first, that is to say, about five years after the first summons. The first summons was not served, the second was. The second suit was for the same cause, was entitled an alias, and so marked on the record; and this, as it has been held, is so connected and linked with the first as to be a continuation or reiteration of the original, and so indissolubly connected as to be one; and that so far as the statute is concerned, it stops running from the institution of the first process. We will not say that the demand might not be barred, if the plaintiff delayed six years before the issuing his alias. That will be a question not presented here.

In the case at bar the right of action accrued November 29, 1876. The suit was brought on June 3, 1882. The alias was issued within six years, to wit, October 15, 1886; and three months afterward, *viz.,* January 14, 1887, the *pluries* issued and was served. So that our case comes exactly within the ruling of McClurg v. Fryer.

If, however, as is said in McClurg v. Fryer, the alias is so connected and linked with the first, and so indissolubly connected as to be one; then the statute of the 27th of March, 1713, Purdon's Digest, p. 1065, § 1, settles this question beyond controversy, *viz.,* "All actions, etc., which shall be sued, or brought, at any time after the 5 and 20th day of April, which shall be in

the year of our Lord, 1713, shall be commenced and sued within the time and limitation hereafter expressed, and not after."

The act does not say sued, brought, and notice served, but if commenced it is within the statute.

PER CURIAM:

This is a case stated, and every fact and point in it has been so well disposed of in the opinion of the learned judge of the court below that nothing is left for us but our concurrence; and that we give without hesitation.

Judgment affirmed.