## Hanna v. Tremarco Corp.

*Edward A. Perlow*, for plaintiffs.

*Reed, Smith, Shaw & McClay*, for defendants.

VAN DER VOORT, J., March 8, 1963.—In this case, plaintiffs, John and Florence M. Hanna, hereinafter called the "Hanna's" have sued defendants, the Tremarco Corporation, hereinafter called "Tremarco" and Gulf Oil Corporation, hereinafter called "Gulf" for damages allegedly suffered by the Hannas, when Tremarco terminated an option agreement it had to buy some land of the Hannas. The complaint was filed on July 18, 1960. Preliminary objections to it were filed on September 8, 1960. After argument on these first preliminary objections, the Hannas were ordered to file a more specific complaint which they did on August 7, 1961. Preliminary objections were filed to the complaint, as amended, of the following nature:

(1) A demurrer;

(2) A motion to strike; and

(3) A motion for more specific pleadings.

Upon these objections, the case was argued before the Court en Banc.

We will consider first the preliminary objection in the nature of a demurrer to the complaint, as amended.

A demurrer admits for the purposes of this decision all the well pleaded material and relevant facts and inferences reasonably deducible therefrom: Silver v. Korr, 392 Pa. 26, 139 A. 2d 552 (1958). A demurrer does not admit unwarranted inferences from the admitted facts, argumentative allegations nor expressions of opinion: Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 160 A. 2d 539 (1960) cert. denied, 364 U. S. 288, 5 L. Ed. 2d 38, 81 S. Ct. 50 (1960).

The facts admitted by the demurrer are as follows:

The Hannas owned a tract of land in the Borough of Forest Hills, Allegheny County, Pennsylvania, fronting 112 feet, more or less, on the Greensburg Pike (U.S. Rte. 30). On May 22, 1957, they executed and delivered to Tremarco Corporation an option to purchase this piece of ground at a price of $30,000 dollars for use as an automotive service station.

On August 7, 1957, Tremarco, acting through Gulf as its agent and attorney in fact, by letter requested the Hannas to sell their property to Tremarco in accordance with the terms and conditions of the option. On or about August 15, 1957, Gulf, as agent for Tremarco, applied for a building permit for the construction of a gasoline service station on the land in question. By September 27, 1957, Tremarco had been unable to secure the building permit from the building inspector and on that date it advised the Hannas that it was extending the time for settlement in accordance with the provisions of paragraph 6 of the option. On November 6, 1957, the building inspector refused the building permit. The application for building permit was considered further by the Forest Hills Borough Council, which, on the following November 13th, refused the building permit. Whereupon Tremarco through Gulf surrendered its rights under the option and refused to go through with the purchase. Subse-

quently, the borough council rezoned the property changing it from a "commercial" to a "residential" use classification.

The option contained among others, two provisions as follows:

"(5) It is understood that the TREMARCO CORPORATION in the purchase of said property maybe required to obtain from the proper legal authorities certain licenses and permits for the construction of contemplated buildings and the carrying on of the business intended by said TREMARCO CORPORATION. Should the title to said property be found defective and unmarketable of record, or should the TREMARCO CORPORATION fail to secure such licenses and permits as it may require for the use of said property in its business, then, at any time before the date of final settlement, it shall have the right to surrender its rights hereunder and receive back the consideration paid therefor.

"(6) Should unavoidable delays arise in connection with the examination of title, securing of permits, surveys or otherwise, making it impossible to complete preliminary work in connection with titles, securing of permits, surveys, or otherwise, before the date fixed for final settlement, it is understood and agreed that final settlement shall be postponed for a sufficient period of time to allow the completion of such preliminary work."

The Hannas claim that Termarco and Gulf breached the contract (composed of the option to purchase and the notice by Tremarco to the Hannas of the former's desire to proceed under the option) because after the building inspector and the borough council had refused to issue the building permit, neither Tremarco nor Gulf took any legal action to attempt to compel the issuance of the permit. The complaint and the amendments to it allege the following things as constituting the breach of the contract:

(1) That the refusal of the borough officials to issue the building permit was illegal, unjust, arbitrary, and unfair. (Paragraph 9 of the complaint).

(2) That defendants' failure to proceed in a good and proper manner was a breach of the contract. (Paragraph 10 of the complaint).

(3) That defendants could have and should have required the appropriate borough officials to issue the permit. (Paragraph 16 of the amended complaint).

(4) That defendants refused to proceed properly and refused to permit and allow plaintiffs to proceed on their own. (Paragraph 17 of the amended complaint).

(5) That defendants did not proceed in good faith to comply with the conditions precedent required by the contract. (Paragraph 18 of the amended complaint).

(6) That defendants failed to secure the building permit within a reasonable time and allowed and permitted the borough officials time to rezone the property. (Paragraph 20 of the amended complaint*).

These allegations contain one statement of fact and that is that defendants should have compelled the borough officials to issue the building permit. Outside of this factual allegation the other averments are conclusions of law and vague expressions of opinion.

The issue raised by the complaint and by plaintiffs in their argument before the court en banc is as follows:

Does the option agreement require defendants or either of them to take legal action to attempt to compel the issuance of a building permit by the Borough of Forest Hills?

---

* The ordinance changing the zoning was enacted by the borough council on February 12, 1958.

Both sides concede that there is no express provision in the contract requiring defendants to engage in a legal contest to compel the issuance of the building permit. The Hannas take the position that there is such an obligation imposed upon defendants by implication from the terms of the contract. With this position we cannot agree. The agreement provides expressly in paragraph 5, that should Tremarco Corporation "fail to secure" a building permit required for the use of the property in question then at any time before the date of final settlement, it has the right to surrender its rights under the agreement and receive back the consideration paid therefore. Significantly absent from this part of the agreement is any obligation on the part of Tremarco to "use its best efforts" or "to exercise due diligence" to obtain a building permit. What the effect would be if such words had been used we do not decide because they were in fact not used in the option agreement. It is of significance however that they are absent. In Boyce v. Barrett, 258 F. 2d 640 (3rd Cir., 1958), a land contract expressly obligated the purchaser to "use all due diligence to do everything required to obtain said [building] permit." The court held that such express language required the purchaser to do nothing more in attempting to secure the building permit after the application for it was refused by the township. This rule would apply with greater force to the present situation where the contract provides for no express obligation on the part of the purchaser to obtain the building permit.

The policy of the law is opposed to requiring a purchaser to accept land which is likely to engage him in a lawsuit. It is settled law in Pennsylvania that a deed which is tendered by the vendor and which exposes the purchaser to the hazard of a law suit is not a deed conveying marketable title: LaCourse v. Kiesel, 366 Pa. 385, 77 A. 2d 877 (1951) (building restrictions);

Reighard's Estate, 192 Pa. 108, 43 Atl. 413 (1899) ; Moyer v. DeVincentis Construction Company, 107 Pa. Superior Ct. 588, 164 Atl. 111 (1933). A similar policy of the law appears in New York in the cases of Anderson v. Steinway & Sons, 178 App. Div. 507, 165 N.Y. Supp. 608 (1917), aff'd. 221 N.Y. 639, 117 N.E. 575 (1917) ; and Williams v. Eldred Refining Co., 130 Misc. 721, 224 N.Y. Supp. 349 (1927).

In the case of West v. Peoples First National Bank & Trust Company, 378 Pa. 725, 106 A. 2d 427 (1954), the Court was considering whether or not the condemnation of 58 acres out of a tract of 142 acres terminated a joint venture contract between plaintiff and defendant under the terms of which contract the plaintiff was to develop the land and share in the proceeds of the sales of the developed property. In its opinion the court said, at page 282:

". . . Of course, as held under the varying circumstances of many cases, where a contract relates to specific property the existence or maintenance of which is necessary to the carrying out of the purpose of the agreement, the condition is implied by law, just as though it were written into the agreement, that the impossibility of performance or the frustration of purpose arising from the destruction of the property or *interference with its use, without the fault of either party*, ends all contractual obligations relating to the property. Moreover, impossibility in that connection means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, or loss involved: Rest. Contracts, §454." (Italics supplied.)

This rule is enunciated as an exception to the general rule that mere impossibility or difficulty of performance does not discharge a party to a contract. Under the rule thus enunciated, there is an implied

condition that the obligation of the parties under the contract was terminated because of unreasonable difficulty, expense, or loss involved. It is thus clear that the implications of the law are contrary to the implications asserted by the Hannas. It is clear that the policy of the law is to excuse contractual obligations where excessive burdens are placed on one of the contracting parties rather than to require just the opposite that a contracting party do more than he has agreed to do. Upon the refusal by the Forest Hills Borough officials to grant a building permit no obligation was placed upon Tremarco by the option to commence legal proceedings to compel the issuance of the permit.

In the case at bar there is express language giving Tremarco the right to terminate the option agreement by surrendering its rights thereunder. A contract may permit one party to rescind and prescribe the method, or make the rescission conditional on the happening or failure of certain conditions: Wright v. Bristol Patent Leather Company, 257 Pa. 552, 101 Atl. 844 (1917); 2 Black, Rescission of Contracts, §416 (2d ed. 1929). If the contract specifies what failures of condition shall be ground for rescission, it governs the rights of the parties in this respect: Emery v. DeGolier, 117 Pa. 153, 12 Atl. 152 (1887). An agreement that the vendor will take back the land and refund the price in case the purchaser is dissatisfied with his purchase, within a period of time, is enforceable and not contrary to public policy: Fuller v. Dempster, 8 Sadler 546, 11 Atl. 670 (1887). In DiBenedetto v. DiRocco, 372 Pa. 302, 93 A. 2d 474 (1953), the court held that where a contract for the sale of land provided that "in the event that the buyer cannot make the settlement, he may cancel this agreement, without any further liability on his part, and deposit money returned", the buyer had

the right to cancel the contract if he was unable to complete the transaction. Where the right to rescind is properly exercised, the parties are restored to their relative positions existing before the contract was made: Walsh v. Aetna Life Insurance Company, 352 Pa. 429, 43 A. 2d 102 (1945).

The option agreement provided in paragraph (5) that Tremarco could rescind by surrendering its rights for either of two reasons, one reason being if the title to the property should be found to be defective and unmarketable of record, and the other being if Tremarco should fail to secure such licenses and permits as it might "require for the use of said property in its business." There is nothing improper nor unusual in these two conditions set forth in the option agreement. There is no claim in this case at bar that Gulf as agent for Tremarco did not make the application for the building permit in good faith. Upon the refusal of the borough officials to issue the building permit, Tremarco had a right to rescind the option agreement.

There is no claim whatsoever against defendant Gulf under the facts as they are pleaded. These facts show that Gulf was acting in this matter as agent of a fully disclosed principal, Tremarco. In such circumstances, liability, if any, on the contract is that of the principal alone and not of the agent: Levy v. Conley, 340 Pa. 332, 17 A. 2d 382 (1941).

The Hannas have cited the case of Atlas Trading Corporation v S. H. Grossman, Inc., 169 F. 2d 240 (1948), in support of their theory of the case. In that case, Atlas had ordered from Grossman 25 (32 at first) automobiles. Grossman had agreed to deliver them subject to Atlas supplying U. S. Government permits, the contract having been made during wartime. Grossman later sold these trucks to the U. S. Treasury Procurement Division. This sale to the Treasury Pro-

curement Department together with other conduct of Grossman prevented Atlas from securing its permits. The court held that this affirmative action in preventing Atlas from fulfilling a condition precedent of the contract which it was required to do in order to buy the automobiles could not rightly enable Grossman to rescind the contract and the court required Grossman to respond in damages. The case cited by plaintiffs is not apposite here. The only allegation in the Hannas' complaint concerning defendants' actions with respect to the Hannas is as follows:

"However defendants refused to proceed properly and also refused to permit and allow plaintiffs to proceed on their own."

This very general allegation is an expression of opinion; it does not recite any facts. At best it charges defendants with a negative attitude towards plaintiffs "proceeding" on their own. There is no allegation in the pleadings nor was there any claim made at the argument that defendants in any way took any action or that they failed to do anything which they were properly required by law to do which interfered with plaintiffs' efforts to have the building permit issued.

For the foregoing reasons, the demurrer will be sustained and, in view of our decision on this first portion of the preliminary objections, there is no reason to consider the motion to strike or the motion for a more specific pleading.

## Order

And now, this March 8, 1963, after argument and consideration of briefs filed, defendants' second preliminary objections are sustained with prejudice to plaintiffs and the complaint is dismissed at plaintiffs' cost.