## Commonwealth v. John Fitzpatrick, Appellant.

*Criminal law—Rape—Evidence—Question for the jury.*

Under an indictment for rape on a child of five years of age the testimony of the mother was properly admitted as to certain discharges to which the child was subjected immediately after the alleged crime.

Whether these discharges were the result of the crime charged was a question of fact for the jury. It was a fact proper to submit to the jury with all the other facts in the case.

*Bills of exceptions—Stenographer's notes—Variance with judge's notes.*

Where the stenographer's notes of testimony are certified by the judge as being at variance with his notes the judge's certificate of the disputed evidence must be regarded as the proper and paramount record of the evidence. The judicial functions of a trial judge can neither be taken from him nor delegated by him to others even though called stenographers; he is free to avail himself of their assistance, but the act must be his act under his authority and upon his responsibility.

*Criminal law—Evidence—Cross-examination of defendant.*

A much greater latitude in the cross-examination of a defendant in a criminal case is permissible than in that of an ordinary witness. The defendant having testified that he had not committed the crime charged, then that which tends to contradict this statement is a proper subject for cross-examination.

*Practice, Super Ct.—Denial of new trial not reviewable.*

A denial of a motion for a new trial is not reviewable in an appellate court and a motion which, while purporting to be in arrest of judgment, is based on statements why defendant should not have been convicted under the evidence, simply presents reasons which might have been considered by the court in support of a motion for a new trial, but which are not reviewable as a motion in arrest of judgment.

Argued March 18, 1896. Appeal, No. 10, Jan. T., 1896, by defendant, from judgment of O. & T. Susquehanna County, Aug. T., 1895, No. 2, sentencing defendant on indictment for rape. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Indictment, first and second counts, rape; third count, assault with intent.

On the 25th of March, 1895, the five-year-old daughter of Mr. and Mrs. James McAndrews of Forest City, Susquehanna county, was criminally assaulted by John Fitzpatrick.

The child was examined by physicians and it was found that the private parts had been injured, the hymen ruptured, and for some time thereafter there was a discharge. The child's drawers were torn and spots of blood and other stains were found upon them. The child was missed from the parents' house in the vicinity of seven o'clock, P. M., or shortly prior thereto. About this time the defendant was seen in the yard of the prosecutor, Mr. McAndrews, the father of the child, and from that time until half-past eight or nine, when her parents again obtained her, she was in the custody and control of the defendant. The defendant could not be found at his boarding place, but after some little effort to find him he was discovered by the officers hiding in a house of questionable reputation behind a pantry door and in a half-clothed condition.

*Errors assigned* were :

(1) In overruling defendant's objection and permitting commonwealth's counsel to ask under objection their witness, Mary McAndrews, the following question. Q. What is the nature of those discharges ?

Objection, unless they offer to prove it to be the result of the crime charged.

A. " A kind of yellow discharge."

(2) In overruling defendant's objection, to the following offer of commonwealth's counsel to prove by their witness, Mary Jones, that he (defendant) was seen in the locality at the time, and also to show what conversation took place there.

(3) In overruling defendant's objection, and permitting commonwealth's counsel to ask their witness, W. J. Maxey, the following question :

Q. Did he make any other statements contradictory as to where he got the child ?

Q. By the Court. Had the defendant been arrested at this time ? A. Yes, sir. Q. And was there in your office ? A. Yes, sir. Q. Did he have any attorney ? A. No, sir. Q. He was alone ? A. Yes, sir. Q. Was the officer or constable with him ? A. Yes, sir, and the office was full of people. Q. He had him in charge ? A. Yes, sir. Q. What did you say to the prisoner before you began to talk with him ? A. I asked him where he got the child that night. Q. I want to know what you said to

the prisoner before you began to ask him questions about his right; did you tell him that he need not answer any questions? A. I told him he didn't need to testify at all if he did not want to be sworn. I asked him if he wanted to be sworn. Q. Did you say anything to him about he had better tell you? A. No, sir, I did not say any thing of the kind to him. Q. Was he sworn? A. Yes, sir, he was sworn. Q. You told him that he need not be sworn without he had a mind to, and he was sworn at his own request? A. Yes, sir.

Objection overruled. Evidence admitted, and bill sealed for defendant.

A. I do not exactly understand the question, but his whole statement was contradictory.

Objection to the answer, and request to have it stricken out. By the Court: Strike it out.

A. He first said that he found the child at the bottler's and brought her down home, and afterward said he brought her from Delaware street past the bottler through the alley down to Main street.

(4) In overruling defendant's objection and permitting commonwealth's counsel to ask John Fitzpatrick, the defendant, on cross-examination, the following questions:

Q. Didn't you tell Geo. Ledyard and Mr. Bates that you had a big time up there that night with some of these women? A. I don't believe I did. I don't know what I said about it at the time. Q. Then you might have said something? A. I might have said something.

(5) In overruling defendant's objection to the following offer by counsel for commonwealth to prove in rebuttal by their witness, W. L. Bates:

By Mr. Ainey: We propose to show that there was only one bed there, so that it would be impossible to board with a man and his wife with one bed.

Q. Did Jack Fitz tell you that he had a big time there that night, or words to that effect? A. Yes, sir, we were going down the hill from the house, and he said I had a big time there, or something like that, and I said you have had the last bone soup you will have for some months, I think. Q. When you found Jack in the pantry was he eating? A. No, sir. Q. What was there there to eat? A. A lot of dirty dishes was all I saw there and a boiler and a stew pan.

Q. There was nothing there to eat? A. No, sir, not that I saw.

(6) In charging the jury without qualification as follows: " There is another piece of evidence on the part of the commonwealth. They put a witness on the stand who testified to seeing this defendant in the neighborhood of the house. of Mc-Andrews about 7 o'clock in the evening of that day, the 25th."

(7) In charging the jury without qualification as follows: " In cases of circumstantial evidence all the evidence of circumstances that are given, all the circumstances that are given in evidence must point, in order to convict, to the guilt of the defendant, and any of the circumstances that can be construed to point to the innocence of the defendant cannot be used by the jury in finding him guilty of the offense, because he is presumed to be innocent until he is proven to be guilty.

(8) In charging the jury without qualification as follows: " You take all the circumstances in the case as has been detailed before you by the witnesses, the question of the conduct of this defendant, the opportunity that he had, time and place, etc., to commit the offense charged and find whether he did it or not."

(9) In denying the motion in arrest of judgment, discharging rule for new trial, entering judgment against the defendant and sentencing him to Eastern Penitentiary for ten years and six months.

*J. M. Kelly, Edson W. Safford* with him, for appellant.— As to third assignment of error striking out a part of the evidence could not remove its influence on the jurors' minds, as was well said in Rahlfing v. Heidrick, 4 Phila. 3.

*W. D. B. Ainey, H. O. Watrous* with him, for appellee.— The last assignment of error is in violation of rule XV. of the Superior Court, for the assignment involves more than one point. It has been repeatedly decided that assignments not made in conformity with the rules will not be noticed: Brown v. Brooks, 25 Pa. 210 ; Kelly v. Bennett, 132 Pa. 218; Alexander v. Commonwealth, 105 Pa. 1.

OPINION BY REEDER, J., April 13, 1896 :

The defendant was indicted for committing rape upon a

child five years old. The mother of the child was upon the stand testifying to the child's condition after its return to the house. She had been asked: ." Q. Was there any physical or mental disturbance that you noticed in the condition of the child after you examined her? A. Yes, sir. Q. What were they? A. Why she was all bruised inside. Q. Was there anything else? A. No. Q. Has she recovered now? A. Well, I do not think so. She seems to be ailing all the time. Q. In what way? What seems to be the matter? A. She has those discharges once in a while. She has some discharges. Q. What is the nature of those discharges? A. A kind of yellow discharge." This answer was objected to unless the commonwealth offered to prove that these discharges were the result of the crime charged. This objection was overruled and forms the subject of the first assignment of error. Under the mother's testimony whether these discharges were the result of "the crime charged" was a fact for the jury. It was a fact proper to submit to the jury together with all the other facts in the case. To adopt a rule of evidence as stringent as that contended for by the appellant would prevent such consideration of circumstantial evidence as would be far reaching in its effects and would materially change the practice in this state. This assignment of error is therefore overruled.

The second assignment of error is to the admission of the testimony of Mary Jones. This assignment is based upon the testimony as it appears upon the notes of testimony as certified by the stenographer. It appears upon these that she testified that she met the defendant as she was coming out of her house into the yard and he was coming up into the yard. The learned judge certifies that the stenographer's notes of testimony are correct, except that according to the notes of testimony taken by himself, and that his recollection of the testimony is in accord with his notes; she testified " that about seven o'clock that evening she met the defendant going in yard of McAndrews." This raises the question whether the notes of testimony as certified by the stenographer are to be regarded as the proper record of the evidence by this court, even where the judge certifies as to their incorrectness, or whether the judge's certificate as to the testimony is to be considered paramount to that of the stenographer. This question was passed

upon by the Supreme Court in Taylor v. Preston, 79 Pa. 436. In that case Justice WOODWARD said, "Some confusion as to the exact character of the evidence produced has been introduced into the cause by an alleged inaccuracy on the part of the stenographer in reporting the ruling of the court when the evidence was offered. Preston, the plaintiff, was on the stand, and having been asked to state the consideration of his contract with the defendant, objection was made to the question on the ground that the contract was in writing.

"It does not appear from the notes that the point raised was decided at all. Application was subsequently made to the court for the correction of the record of the testimony. This was refused because the law had made these notes the best evidence, in cases of dispute. The judge who tried the case has certified however that the court decided to admit the evidence, saying in substance that it was competent to show the consideration by parol, and that 'the evidence was not offered or received for the purpose of proving a parol promise to pay the purchase money due.' While this misunderstanding may have no evil influence in this particular case, it may be remarked in passing that its occurrence indicates the possibility of mischief that may flow from too liberal a construction of the act of the 15th of May, 1874. In providing by the second section that the stenographic notes of the testimony in all proceedings of any trial of the facts, together with the charge of the judge, shall be deemed and held to be official, and 'the best authority in any matter of dispute,' the legislature did not design to subordinate the power of the judge to the power of the stenographer. The administration of the law has been committed to the courts by the constitution, and the same constitution has provided that judges, and not clerks, shall compose those courts. Responsibility for the conduct of legal business must rest where it has been constitutionally lodged. The legislature would have no power, as they would have had no intention, to impose upon the clerk who records the details of the trial, the duties of the judge who tries the cause. The stenographic notes that are to be 'the best authority in any matter of dispute,' are the notes made up under the eye and direction, and with the approval of the court. They have then the effect of the prothonotary's certificate of the record of a cause, and are subject to be modified and

molded in accordance with what may be judicially found to be the fact, precisely as its records are always subject to the court's control." In Connell v. O'Neil, 154 Pa. 582, Justice MITCHELL says, after quoting most of that which has just been written from Taylor v. Preston: " This language was used with reference to the act of 1874, but it is equally applicable to the subsequent acts on the same subject. The bill of exceptions fills the exact place it always did, it is equally indispensable as it was before, and though it may be taken down by the stenographer yet it is not his act but that of the judge. . . . And being thus, as it always was, the act of the judge, it becomes his duty to see that it is correct, and that his signature to the bill is a certificate of correctness on which this court can rely. As on the one hand his judicial functions cannot be taken away from him, so on the other hand they cannot be delegated by him to subordinates even though called stenographers. He is free of course to avail himself of their assistance, but the act is his act, under his authority and on his responsibility." It will be seen therefore that the testimony embodied in this assignment of error as the testimony of Mary Jones is not her testimony, but it is that which is contained in the certificate of the learned judge of the court below. It could not be satisfactorily contended that this was not properly admissible as evidence, even though it had been assigned for error. The second assignment of error must be dismissed.

The third assignment of error is so absolutely without merit that it is perplexing why it should ever have been made. The witness was called to testify to contradictory statements of the defendant upon the night of the perpetration of the crime. He testifies that he told the witness he need not be sworn if he did not wish to be, and that he was sworn at his own request, and that he made contradictory statements as to where he was upon the night in question. There was no error in the admission of this testimony.

The fourth and fifth assignments of error are as much without merit as the third. The question asked of the defendant in cross-examination was whether he had not told some parties. as to his whereabouts upon the night of the commission of the crime. He did not admit that he said so, and denied having "a big time" there that night. As he did not admit it no harm was done the defendant. Even though he had the question

would have been a proper one.   A much greater latitude in the cross-examination of a defendant in a criminal case is permissible than in that of an ordinary witness.   The defendant had testified that he had not committed the crime charged, therefore that which tended to contradict this statement was a proper subject of cross-examination.   It was competent for the commonwealth to show therefore where he was and what he did upon the same night after the commission of the crime. The order of the admission of this testimony was discretionary with the court below.   Besides, one of the contentions of the commonwealth was that the defendant was hiding at Kelley's house to escape arrest.   The defendant in denial of this declared he had changed his boarding place from his brother's to Kelley's the day the crime was committed.   And his cross-examination and the examination in rebuttal was to show statements of his inconsistent with this testimony.   For this reason also the testimony was admissible.   In addition to what we have already said, the fourth assignment of error could not be sustained, for the reason that there was no objection and therefore no exception to the testimony in regard to the defendant's declaration to Bates that he had "a big time" there that night.

The sixth, seventh and eighth assignments of error relate to the charge of the court, and the ninth to denying motion in arrest of judgment and motion for a new trial.   The first three of these assignments can be considered together.   In regard to the last it is only necessary to say that it was not a motion in arrest of judgment at all, although the appellant is pleased to call it so.   It contains two statements of why the defendant should not have been convicted under the evidence, both perhaps proper to present to the court's consideration in a motion for a new trial, but not in a motion in arrest of judgment.   A denial of a motion for a new trial is not reviewable in this court.   In regard to the sixth assignment of error, that is disposed of by what we have already said in regard to the judge's correction of the transcript of the notes of testimony in the evidence of Mary Jones.   The seventh and eighth assignments of error relate to portions of the charge of the court.   We can find nothing in these portions of the charge which would justify us in sustaining these assignments.

Judgment affirmed.