# Sarah Kerns *v.* The Prudential Insurance Company, Appellant.

*Contract—Rescission—Measure of damages.*

When one party to a contract refuses without right to perform his part the other party may elect either to sue on the contract to recover damages for the breach, or to rescind the contract and sue in assumpsit to recover back the money paid under it.

*Insurance—Rescission of contract—Measure of damages.*

Where a policy holder has fulfilled his part of the contract under said policy until the policy was forfeited by the company, the insured may treat the contract as rescinded and recover back the premiums already paid with interest.

Argued March 14, 1899.   Appeal, No. 11, March T., 1899, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1898, No. 155, on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by RICE, P. J.

Appeal from judgment of an alderman.   Before McPHER-SON, J.

It appears from the record and evidence that the defendant was a joint stock company for the insurance of lives and that the plaintiff applied for insurance upon the lives of her children Anna E. and Charles, and a policy was issued on the life of each.   Subsequently two policies were issued by the defendant to the plaintiff upon her own life.   Premium receipt books accompanied the policies.   There was evidence tending to show that plaintiff determined to drop the policies on her own life and continue in force those on the lives of her children; that notice and direction to that effect was given to the agent of the company; that the agent after such notice applied thirty cents, which she paid upon the policies remaining in force, to the policies which she directed to be lapsed, and that she was entitled to a credit of thirty cents, which her books did not show, on the policies in force.   About the last of March, 1895, a dispute arose over the payment of the thirty cents, but plaintiff continued to pay upon the remaining policies until the spring of 1897.   Subsequently about May 31, 1897, when her books

210     KERNS *v.* INSURANCE CO.

Statement of Facts—Assignment of Error. [11 Pa. Superior Ct.

showed seventy cents due, or seven weeks' arrearage, she called at the office of the superintendent and offered to pay forty cents, claiming that to be the total amount due. This was refused unless seventy cents were paid.

At the trial, the court, under objection of defendant, admitted and subsequently refused to strike out, evidence consisting of the books, showing the amounts paid and the dates of payment, to enable the jury to ascertain the amount of damages. It also appears from the record that the stenographer who took the notes of testimony at the trial became ill before they were written out. The testimony was transcribed from his notes by another stenographer, but the first stenographer died before he could correct the transcript. The charge was written out at defendant's request but the court certified that it was not a complete manuscript and against portions of the charge wrote these words, " This is not reported correctly." Plaintiff's suit was to recover the total amount of the premiums claimed by her from the company, alleging a rescission of the contract.

The court left the question to the jury who found a verdict for the whole amount of plaintiff's claim.

Verdict and judgment for plaintiff for $63.06. Defendant appealed.

*Error assigned* among others was (8) in refusing the motion of defendant to strike out the evidence consisting of the books showing the amounts paid and dates of payments unsupported by other evidence to enable the jury to ascertain the amount of damages, which motion and ruling is as follows : " Mr. Hargest : I move to strike out the evidence consisting of the books, which were offered and admitted for the purpose of showing the amounts paid, and the dates of payment. It is not followed by any evidence showing, or tending to show, any element by which the jury can arrive at a proper measure of damages in this case, and alone is not competent to go before the jury upon any element of damages. It has not been followed by what is necessary to enable the jury to arrive at the proper measure of damages. By the Court : We decline to strike the testimony out. Exception noted for defendant." Other assignments were to the refusal of defendant's points and portions of the judge's charge.

209, (1899).]                    Arguments.

*W. M. Hargest*, for appellant.—The defendant's contention is that, even assuming that the company ought to have received the amount of premiums offered by the plaintiff and refused to do so, the damage to which the plaintiff is entitled is the net value of policy, without regard to the health of the holder and calculated as of the date of the breach, according to the tables of mortality used in the business of life insurance: Com. v. Ins. Co., 162 Pa. 586.

It is contended that if the plaintiff were entitled to recover, the rule laid down in the case cited is the one to be followed.

The position of the company is that of having a policy of insurance with the premiums not paid through any fault of its own.

It is precisely the same in principle as the case of Ins. Co. v. Statham, 93 U. S. 24, where the failure to pay premiums was caused by the intervention of the war.

The legislature of Pennsylvania has pointed out the exact method of obtaining the net value of a policy: Act of April 4, 1873, P. L. 20, sec. 5.

In New York it is held " If an insurer has violated a contract and voluntarily disabled itself from performance, the insured may recover such damages as he can show he has sustained : " People v. Ins. Co., 92 N. Y. 105.

In Connecticut he may recover the just value of his policy : Day v. Ins. Co., 45 Conn. 496 ; 29 A. M. Rep. 693.

In West Virginia he may recover the premiums actually paid, less cost of insurance during the time the policy was in force : Abell v. Ins. Co., 18 W. Va. 400.

The case of Ins. Co. v. McAden, 109 Pa. 399, is relied on by plaintiff to sustain this judgment.

*Levi B. Alricks*, with him *George R. Barnett*, for appellee.— At the outset, the defendant's counsel called for a statement of the plaintiff's claim, saying, " This is an appeal from the judgment of an alderman, and I would like to know upon what theory the plaintiff claims."

Mr. Barnett, for the plaintiff, replied : " The plaintiff claims that she fulfilled her part of the contract until the policy " (meaning policies) " was declared forfeited by the company, and, after the agent refused the money, she tendered it to the

Home Office, in Harrisburg and that they refused to accept the money for four weeks, and declared the policy lapsed. We claim $31.20 on each policy, or $62.40 on both policies."

The rule for the measure of damages as laid down by the court below is correct, that is, measure of damages if the amount paid is with interest. This is clear under the authority of Ins. Co. v. McAden, 109 Pa. 399, where the authorities are reviewed.

OPINION BY RICE, P. J., July 28, 1899 :

This was an action of assumpsit to recover the premiums the plaintiff had paid on two policies of insurance held by her on the lives of her children. She claimed that she had regularly paid all the weekly dues or premiums until May, 1897; that the company through its agents, insisted, contrary to the fact that certain of these payments, amounting to thirty cents, had been made and properly applied on account of two other policies, and not on the policies in question, and therefore, this sum was still owed ; that unless she paid this sum in addition to the dues then accruing, the policies would be lapsed ; that she refused to pay this additional sum, but tendered the proper dues which the collecting agent refused, and thereupon declared that the policies were lapsed ; that she renewed the tender to the superintendent, who refused to accept it; and that from that time until she brought suit, four or five months afterwards, no agent called for dues, nor was any communication from the company received.

The foregoing, without prolix detail, was her claim. It is not our province to declare what the truth is with regard to the disputed allegations ; it is enough to say that there was sufficient evidence to warrant a jury in finding all the facts alleged, including the fact that the company regarded and treated the policies as lapsed or forfeited. These facts fairly bring the case within the ruling of our Supreme Court in American Life Insurance Co. v. McAden, 109 Pa. 399. After showing, that when one party to a contract refuses without right to perform his part, the other party may elect either to sue on the contract to recover damages for the breach, or to rescind the contract and sue in assumpsit to recover back the money paid under it, Mr. Justice CLARK uses language which aptly fits the present case :

" The policy, when made, was admittedly valid; the premiums which were paid were voluntarily paid upon that policy, the risk had been running for ten years; the obligations of the contract were long since in force, on both sides, and it is clear that the plaintiffs could not of their own mere motion rescind it, so as to recover back the premiums paid; but if after receiving these premiums, the company without right refuse to receive further premiums as they mature, deny the obligation, and declare the contract at an end, the plaintiff, we think, may take the defendants at their word, treat the contract as rescinded, and recover back the premiums paid, as so much money had and received for their use. Rescission or avoidance, properly so-called, annihilates the contract, and puts the parties in the same position as if it had never existed: and notice that a party will not perform his contract has the same effect as a breach: Ballou v. Billings, 136 Mass. 307. It is of no consequence that the payment of the premiums was voluntary, upon a valid obligation of the plaintiff to discharge a debt which the plaintiff owed, and which the defendant had a right to receive; the action is not founded in any fraud or failure in the original contract, but on a rescission of it through the subsequent refusal of the defendant to perform it."

The same principle was recognized and applied in our own case of Bresnahan to the use of McNulty v. The Prudential Insurance Co., 7 Pa. Superior Ct. 1. The authority of the decision in McAden v. Ins. Co. was recognized as late as 1896 in Marshall v. Fire Insurance Co., 176 Pa. 628, and we are not aware that it has ever been questioned. The rule laid down in Com. v. American Life Ins. Co., 162 Pa. 586, for the distribution of the assets of an insolvent insurance company does not apply to the case of a voluntary and wrongful forfeiture of a policy and refusal to receive further premiums where the insured elects to rescind. There is not an intimation in the last cited case modifying or in any way questioning the doctrine of McAden v. American Life Insurance Co. It is not necessary to comment on the cases from other states cited by the defendant's counsel. Some of them are plainly distinguishable from the present, and so far as any of them are in conflict with the decision of our Supreme Court, the latter must control. The sum of the matter is this: If the reasons assigned by the defendant's agent and superin-

tendent were valid and true, the refusal to receive the dues tendered by the plaintiff was right; if the contracts were in fact, forfeited and void, there was no contract remaining to rescind, and therefore no right to recover anything. But if the plaintiff's allegations as to the amount previously paid on the contracts were true, the refusal to accept her tender was wrongful; she had a right to assume from the acts and declarations alluded to at the outset of this opinion, that the company regarded the policies as lapsed or forfeited; and therefore she had a right to rescind and recover in an action for money had and received the whole amount paid. It follows that the court committed no error in receiving the evidence as to these payments or in refusing to strike it out. The eighth assignment of error is overruled.

The other assignments are based exclusively on the charge of the court; but it is contended by the plaintiff's counsel, and we think correctly, that the charge is not properly on the record, and is not before us for review. What is printed and attached to the record as the charge is on its face incomplete in many passages, and opposite one of them, which bears materially on some of the assigned errors is the memorandum made by the trial judge: "This is not correctly reported." The only certificate of the judge at the end is as follows : " This was written out at defendant's request, but it is not a complete manuscript." It will be noticed that there is no certificate even that it is correct as far as it goes. There have been many recent decisions as to the procedure for bringing the charge and answers to points on the record and making them the subject of assignments of error. The latest of these is Curtis v. Winston, 186 Pa. 492. The precise question here is to the authentication of the charge, not as to what must be done before verdict. Upon this question there is no room for discussion. When the judge does not sign a bill of exceptions as to the charge and answers to points, it must appear in some way affirmatively that the charge as reported by the stenographer is approved by the judge as correct. Without that the filing by the stenographer is a nullity : Connell v. O'Neil, 154 Pa. 582; Hill v. Egan, 160 Pa. 119; Com. v. Arnold, 161 Pa. 320; Smith v. Times Pub. Co., 178 Pa. 481 ; Harris v. Traction Co., 180 Pa. 184 ; Com. v. Fitzpatrick, 1 Pa. Superior Ct. 518; Heyer v. Piano Co., 6 Pa. Superior Ct. 504;

Stout v. Quinn, 9 Pa. Superior Ct. 179. We must therefore dismiss these assignments. We have, however, considered the really important question in the case in disposing of the eighth assignment.

The judgment is affirmed.