# Walsh *v.* Aetna Life Insurance Company, Appellant.

Argued May 22, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERON, STEARNE and JONES, JJ.

*Robert Dechert,* with him *Edward W. Warren, O'Malley, Hill, Harris & Harris, Barnes, Dechert, Price & Smith* and *D. P. Cavanaugh,* for appellant.

*Maurice V. Cummings,* with him *John W. Bour,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 29, 1945:

This is a suit on a policy of life insurance issued by the defendant on October 17, 1924, to Thomas F. Walsh, in the amount of $10,000. The insured died on May 4, 1941, and his beneficiary, Elizabeth H. Walsh, brings this action. The defense to this claim is that the policy lapsed on July 19, 1934. The validity of this defense depends on the construction of the following clauses in the insurance policy:

"Section 6. The Company will make loans on the sole security of this policy, if there has been no default in payment of premium. The loan may be for any amount which, with interest, shall not exceed the cash value in Table A for the end of the current policy year, less any unpaid premiums for such policy year. . . . Interest shall be at the rate of six per cent per annum payable at the end of each policy year. . . . If interest is not paid when due it shall be added to the principal and bear interest at the same rate, provided the total indebtedness shall be within the limit secured by the cash surrender value of the policy. Otherwise, non-payment of interest shall render the policy null and void thirty-one days after notice shall have been mailed by the Company to the last known addresses of the owner, of the insured. . . .

"Section 8. . . . the amount of any premium not paid before the end of the grace period will automatically be loaned by the Company in payment of such premium and charged as an indebtedness secured by this policy, subject to interest at the rate of six per cent. per annum as prescribed for loans, provided that the total indebtedness hereunder will then be within the loan value described in Section 6. If the loan value is insufficient to cover the whole premium, the Company will loan a pro rata premium for as long a period as the loan value will allow. At the end of such period, if the balance of the premium be not paid, this policy shall cease; subject, however, to 31 days' notice as provided in Section 6 hereof."

The facts are as follows: The insured paid all the premiums up to and including premium due on January 17, 1933. On April 12, 1933, the insured made a cash loan against said policy in the amount of $615. On October 17, 1933, which was the end of the policy year, interest from April 12, 1933 to October 17, 1933, in the sum of $18.96 fell due and was added to the principal of the loan, making a total due of $633.96, with reference to the cash loan.

The April 17, 1933 and July 17, 1933, premiums were not paid by the insured and the amounts of these premiums were loaned by the company under the provisions of Section 8 known as the automatic premium loan provision. On October 17, 1933 and January 17, 1934, the premiums were not paid by the insured and the company made loans under Section 8 of pro rata premiums of $26.23 and $42.03, respectively, and each time sent a thirty-one days' notice to the insured, stipulating that he must pay the balance of the premium by a certain date, and both times insured paid the balance of the premium.

The next quarterly premium date was April 17, 1934, and the insured did not pay that premium, but within the period of grace, upon the payment of the sum of $14.85, obtained an extension of payment for the balance of the premium, $64.15, for a period of seventeen days, or until May 4, 1934. Under the grace period the insured actually had until June 4, 1934, in which to pay the balance of the premium, which he failed to do. Nothing was done by the company on June 4, 1934, but on June 18, 1934, a notice was mailed by the company to the insured, as follows: "Since the premium under the above numbered policy due April 17th, 1934, was not paid and the loan value of the policy was not sufficient to pay the entire premium, the Company has loaned the entire value of the policy in payment of a pro rata premium for as long a period as the loan value would allow. In conformity with the terms of the policy, you are hereby notified that the balance of this premium amounts to $64.15, and if not paid within 31 days after date of this notice, which date is the date on which this notice is mailed by the Company, the policy will cease.

"Our General Agent, R. H. Miller, Select Building, Scranton, Pennsylvania, to whom all payments should be made will offer any possible assistance to aid you in keeping your policy in force, and will be glad to furnish you with any further information you may desire."

After sending the above notice on June 4, 1934, the company made a calculation which revealed that it was not warranted under the automatic premium loan clause to lend a sufficient sum of money to carry this policy to July 19, 1934. These calculations showed that if a loan had been made sufficient to maintain the policy for the period stated, the indebtedness would have been $969.08. The cash value of the policy on that date, if all premiums had been paid, would have been $953.56.

Appellant contends that the company erred in including in its calculation of indebtedness, the sum of $19.02, this being an item of interest on the cash loan for the six months' period from October 17, 1933 to April 17, 1934. If that item had not been included in the company's calculation, the indebtedness would have been only $950.06, or $2.50 less than the cash value of the policy.

The initial question is: Was the company justified in charging interest on the loan covered by this policy for the six months' period above stated, or was it obliged under the terms of the policy to wait until the end of the policy year, i.e., October 17, 1934, before adding interest to the "loan charge" on the policy?

All matters in controversy were referred to Sidney Grabowski, Esq., who after a hearing filed his report in which he held as conclusions of law that "under the terms of the policy, interest on the cash loan was due only at the end of each policy year," and that "the policy does not authorize the defendant to include in its calculations of indebtedness the amount of interest to any intermediate date, other than the end of the policy year, for the purpose of determining the loan value of the policy available for automatic premium loans" and "the defendant had no right to include interest of $19.02 on the cash loan for a period from October 17, 1933 to April 17, 1934, in calculating the indebtedness on the policy as of July 19, 1934.

The Referee cited as authority for his conclusions the case of *Roeser v. National Life Ins. Co.*, 115 Pa. Su-

perior Ct. 409, 175 A. 887. In that case after the death of the insured named in a fully paid up policy, the company claimed that the policy had been forfeited by the insured's failure to pay interest due on March 9, 1932, on a loan of $3043.74 on that policy. The latter provided " 'that the company will loan upon the sole security of the policy . . . up to the limit secured by the . . . cash or loan values at the end of the policy year within which application for the loan is made. . . . If such interest [at 6% per annum] be not paid, when due, it shall be added to the principal until the limit of said cash surrender value has been reached, whereupon, if then the interest be not paid, the policy shall become null and void, but not until one month after notice shall have been mailed by the company to the last known address of the person to whom the loan was made and of the insured and any assignee. . . . All indebtedness under the above pledged policy shall be due and payable whenever such indebtedness and the interest thereon shall equal or exceed the loan value of said policy as per table therein, and all rights and insurance under said policy shall thereupon terminate when thirty-one days' notice has been mailed to the last known address of the person to whom this loan was made and of the insured and of any assignee, in accordance with the provisions of said policy, or shall be due and payable from the proceeds of said policy arising through death of the insured, maturity under its terms or any settlement by surrender under its options.' " The policy contained a table showing the 'Cash or loan value' of the policy on each anniversary date for twenty-five years, such value being at the end of the twenty-first year $3105.90, with increasing amounts on each annual policy date thereafter."

On the anniversary date, November 7, 1931, the cash value exceeded the amount of the obligations by $62.16. On March 9, 1932, the defendant calculated the interest to that date at $62.40 and notified the insured in writing that the policy would become null and void if such interest was not paid within thirty-one days.

The company then undertook to calculate the interest eight months in advance of the anniversary date on the theory that the principal and interest *so accrued* would then exceed the cash or loan value of the policy on the previous anniversary date. The court below in that case and the Superior Court held that "this could not be done under the terms of the policy or the loan agreements."

The Superior Court, in an able opinion by Judge PARKER, later Justice PARKER of this Court, said: " 'That an existing doubt as to the construction of the different parts of a policy of insurance must be resolved in favor of the insured is familiar law': *Carter v. Metropolitan Life Ins. Co.*, 264 Pa. 505, 508, 107 A. 847; *Francis v. Prudential Ins. Co.*, 243 Pa. 380, 90 A. 205. By the terms of the loan agreements the interest was not due and payable until the anniversary date of the policy. When the loan agreement referred to the indebtedness and interest thereon equaling or exceeding the loan value shown by the table attached to the policy, it referred to interest due on the anniversary date. It is suggested by the appellant that this construction compelled the company to carry a loan after the security had become inadequate. To this it may be replied that the company, experienced in such matters, should have provided for such a contingency in clear and unequivocal language or required the interest to be paid in advance. By the pleadings it appeared that the value of the policy was increasing in the same sense that the interest was accruing. It is evident that it was not contemplated by the agreements in question that the interest would be exacted before the anniversary date of the policy for by its terms the insurer agreed to loan upon the sole security of the policy up to the limit of the 'cash or loan values at the end of the policy year within which application for the loan is made.' . . .

"We are of the opinion that the condition in the policy loan agreements that whenever such indebted-

ness and the interest thereon shall exceed the loan value of the policy it might, after notification, be forfeited, means interest that is not paid at the time it is due according to the contract, that this interest was not due until the end of the policy year, and that the policy was not subject to forfeiture at the time notice was given. 'Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulations of the parties': *Helme v. Phila. Life Ins. Co.,* 61 Pa. 107, 111."

The authority just cited clearly decides that in cases arising under contracts like the one before us, it is the interest due and payable and not the interest accrued that must be taken as the interest factor in the calculations. A similar conclusion was reached in the cases of *Senin, Admr., v. Metropolitan Life Ins. Co.,* 153 Pa. Sup. Co. 658, and *New York Life Ins. Co. v. Shivley,* 69 S. W. (2d) 392. The learned Referee correctly held that the *Roeser* case was decisive of the first question before him and the court below sustained him in that conclusion.

The Referee then said: "The question now arises whether the policy was still in force at the time of the death of the insured, who died on May 4, 1941. We have no difficulty in finding that the defendant did not exercise strictly its right to a forfeiture of the policy and that the forfeiture was not justified and was unlawful for several reasons: In the first place, the notice was premature, in that the policy by its terms would not have lapsed on July 19, 1934, as noted above; in the second place, the notice was not strictly in accordance with the provisions of the policy; in the third place, the company demanded a payment greater than it should have." In its letter of June 18, 1934, pursuant to which letter the company claimed the policy lapsed, the company took the position that it had "loaned the entire value of the policy in payment of a pro rate premium." The Referee properly found that such was not the fact.

The Referee pointed out: "Even on the defendant's own calculations there was some loan value on May 4 and on June 18. Instead of making such a loan, the company demanded payment of the full balance of the premium due May 4, to wit: $64.15, and notified the insured that if this amount was not paid within thirty-one days after the date of the notice, June 18, 1934, the policy will cease. Under these circumstances, the insured was misled when he was informed that the loan value had been used up to pay a pro rata premium and the amount demanded was for more than he should have been required to pay."

But the Referee also specifically found that "the insured abandoned all right, title and interest in and to the policy, if any he had." The question now comes to this: Is there sufficient competent evidence to support this finding? This evidence, if it exists, must be found in inferences drawn from plaintiff's conduct in respect to the policy. It is undisputed that the insured made no objection to the defendant's statement in the letter of June 18, 1934, that if the balance of the premiums, amounting to $64.15, is "not paid within 31 days after date of this policy . . . the policy will cease." The Referee stated in his report: "No premium or tender of payment of premium has been made either on October 17, 1934, or on any other subsequent quarterly premium payment date, or at any time up to the date of the death of the insured on May 4, 1941. In fact, twenty-eight premium dates passed since the forfeiture was declared." The insured did not even take exception to the letter of June 18th even to the extent of suing on the contract to recover damages for its breach or suing in assumpsit to recover the money paid on it. In *Gaskill v. Pittsburgh Life & Trust Co.*, 261 Pa. 546, 104 A. 775, this court held that one holding a policy in an insurance company which wrongfully revokes the policy may elect whether to enforce the contract or treat it as rescinded and recover for the breach, and if he takes the latter course he may

recover back the full amount of the premiums paid thereon with interest, without deduction for the protection afforded the assured while the policy was in effect." To the same effect is the decision in *Kerns v. The Prudential Insurance Company,* 11 Pa. Superior Ct. 209, and *American Life Insurance Co. v. McAden,* 109 Pa. 399, 1 A. 256.

According to the theory of the appellee, when an insurance company makes an error in its interpretation or in its calculation and erroneously states to an insured that if he does not pay a certain amount by a certain date, his policy will lapse for non-payment of premiums, that statement so based on such an error is tantamount to giving the insured a paid-up life insurance policy, and the insured's duty in respect to that policy is completely terminated. While courts have gone far in interpreting insurance contracts in favor of the insured when questions have arisen as to the continued existence of an insurance policy under certain conditions even when premiums have not been paid, we do not believe that any court has gone as far as appellee would have us go in this case. The facts in this case do *not* bring it within the general rule stated by Joyce on Insurance, Vol. 2, sec. 1123, p. 2240, as follows: "If the company has expressly declared a forfeiture of the policy, and it is clearly apparent from acts or declarations that a tender would not be accepted, or if it has declared a forfeiture and refused the premium, the fact that there has been a failure subsequently to pay or tender the premiums as they fell due will not prevent a recovery on the policy."

In the instant case the company did not declare the policy forfeited or give any indication that a tender of premiums would not be accepted. The company *asked* for a tender of premiums on July 19, 1934, (when a premium was *not* in fact due), and it said that if the premium was not paid *then* "the policy will cease." Upon receipt of this notice it was the insured's duty to

call the company's attention to the error in its calculation and to challenge its statement as to the date the policy "will cease." Instead of doing this, the insured apparently accepted the company's calculations and conclusions and never thereafter tendered any premiums. We cannot reasonably believe that the insured had any idea that he was, by the letter of June 18th, being presented with a paid-up life insurance policy. He knew that to keep a policy alive (before it becomes a fully paid-up policy) premiums must be paid when they are due or within 31 days thereafter. When after the receipt of the letter of June 18th the insured did nothing in respect to this policy the inference is legitimate that he considered it as terminating on July 19, 1934, and accepted the situation. If he had wished to keep his policy in force after the latter date, he would have challenged the defendant's statement, and would have said that according to the loan value of this policy, it remains in force until a date subsequent to July 19, 1934, and at that subsequent date, the premium then due will be forthcoming. Of course, if the insured had died after July 19, 1934, but before the "subsequent date," the beneficiary could have recovered on the policy. The subsequent date was apparently July 23, 1934.[1] It certainly was *not* May 4, 1941, when the insured died. That the insured looked upon the policy as having "ceased" is indicated by the fact that three months after he received the letter of June 18, 1934, he applied to the original soliciting agent for a new policy and stated in his appli-

[1] The interest which had "accrued" since October 17, 1933, was $19.02. Appellant says: "The effect of excluding this item would have been to maintain the policy in force only to July 23, 1934. The new pro rate premium loan would have been increased by $3.50, because the calculation revealed a deficiency on July 19, 1934, of $15.52 ($19.02 less $15.52 = $3.50)". Appellee says: "The exclusion of only $19.02 [the accrued interest] would result in the indebtedness being at least $4.00 less than the cash value on July 19, 1934 . . . and the cancellation [on July 19th] would be premature [to the extent of $4.00 worth of insurance, i.e., about 5 days protection.]

cation that the only policy then in force on his life was another policy which had been issued by defendant in 1933. (The policy involved in this suit had been issued in 1924.)

If on July 19, 1934, the company had declared the policy forfeited and during the few days period which intervened before the company had the right to declare the policy forfeited, the insured had tendered the premium due to keep the policy in force thereafter and if the company had refused such tender, we would have a factual situation where the insured would have been under no obligation to make further tender of premiums, in order to keep the policy in force. An insured is not required to make tender of premiums where the company by its action plainly tells him that his tenders will be refused.[2] But that was not the situation in the instant case. The company by its letter of June 18th really invited the insured to pay the premiums so that the policy could remain in force and offered the assistance of its agent in keeping the policy in force.

We have found no other case in which the facts are like those in the case at bar, but the reasoning in the opinions in certain analogous cases support the conclusion reached by the Referee in this case. In *William E. Clow et al. v. Western Life Indemnity Company*, 182

---

[2] The general rule is that if an insurance company refuses to accept a premium tendered it, no tender of subsequent premiums need be made in order to keep the contract of insurance in force, unless the insurer renews the duty of the insured by notice that the premiums will be received or are due: Couch Enc. of Ins. Law, Vol. 3, sec. 637a, p. 2057. This court held in *Girard Life Ins. Co. v. Mutual Life Ins. Co.*, 86 Pa. 236, that when an insurance company declared a policy forfeited and refused a tender of a premium when due, the insured's subsequent failure to pay premiums will not affect his right to recover on the policy. To the same effect was our decision in *National Mutual Ins. Co. v. Home Benefit Society of New York*, 181 Pa. 443, 37 A. 519, "A rejected tender of a life insurance premium counts as a payment thereof, so that a life policy did not lapse in case premiums were tendered and arbitrarily refused:" Appleman Insurance Law & Practice, Vol. 14, Sec. 8076.

Ill. App. Ct. Rep. 251, it was held that a member of a life indemnity company who was unlawfully suspended from the membership and who, after a compromise agreement for a settlement of the dispute has been reached, abandoned the negotiations with the company, had abandoned his policy and acquiesced in its cancellation. In the instant case the insured did not even enter into negotiations, though the letter of June 18th, in substance invited him to do so. He really took an attitude of "let it go." In *Swayze v. Mutual Life Ins. Co.*, 32 F. (2d) 784, where after the death of the insured a claim was made that the policy was in force because the notice of the policy's cancellation for non-payment of premiums was not in conformity with the notice required, the court said: "The defendant urges that, in any event, the parties have indicated a clear intention to abandon their contract. From the facts stated there is no particle of doubt of the fact of such abandonment. For more than three years the insured made no effort to pay or tender any premiums under this policy, nor did he make any inquiry concerning the policy. He paid no attention to the three notices sent to him. It is simply an ordinary case where an insured concluded to drop his policy."

In *Mutual Life Insurance Co. v. Hill*, 193 U. S. 551, the claim was made after the death of the insured that though four annual premiums had not been paid, the policy was nevertheless in force because the company had failed to give the required notice of forfeiture. The defendant relied upon the non-payment of the premiums other than the first, and an abandonment of the contract. A demurrer to these defenses was sustained and a judgment entered for the plaintiffs, which was affirmed by the Court of Appeals for the Ninth Circuit. 97 Fed. Rep. 263; 38 C. C. A. 159. A writ of certiorari was issued by the United States Supreme Court, 176 U. S. 683, the judgment reversed and the case remanded for further proceedings. 178 U. S. 347. An amended answer and a replication were then filed by leave of the Circuit Court.

A trial was had before the court and a jury, which resulted in a verdict and judgment for the plaintiffs. This judgment was affirmed by the Court of Appeals, 118 Fed. Rep. 708, 55 C. C. A. 536, and the case was again brought to the United States Supreme Court on certiorari. 188 U. S. 742. The United States Supreme Court reversed the judgments of the courts below and remanded the case to the Circuit Court with instructions to set aside the verdict and grant a new trial and "to proceed further in accordance with the views expressed" in the opinion. In its opinion the United States Supreme Court made certain statements which are apposite to the instant case, to wit:

"Courts have always set their faces against an insurance company which, having received its premiums, has sought by technical defenses to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have deliberately been left unpaid. . . . We are satisfied that the thought never occurred to Rex [the insured] during his lifetime that he had a claim against this company on the policy which had been issued so many years before, or, if he did, after the lapse of any appreciable time, it was a dishonest thought, for he knew that he had not performed the duties which devolved upon him under the contract, and that he had no rights thereunder; and there seems to be no just reason why his administrator should demand rights which he virtually waived." [3]

We sustain the Referee's finding and conclusion as follows: "Taking into account the fact that after no-

---

[3] Other cases in which the courts sustained findings of an abandonment of the policy by the insured where the respective policy holders had neglected for periods of eight, nine and twelve years, respectively, to pay premiums, but in which the several notices of forfeiture were technically insufficient, are the following: *McGeehan v. Mutual Life Ins. Co.*, 111 S. W. 604; *McDonald v. Grand Lodge*, 53 S. W. 282; *Lone, Admr., v. Mutual Life Ins. Co.*, 74 Pac. 689.

tice of the lapse, the insured took no active steps to repudiate the asserted forfeiture, kept inactive and silent, made no objection to the notice of lapse, no tender of payment of premiums, and a period having elapsed equal to the period of the statute of limitations, the insured is held to have abandoned his contract of insurance, the policy in this suit. For that reason, the policy was not in force at the time of his death and plaintiff should not recover."

The judgment of the court below reversing the judgment of the Referee is reversed, and judgment is here entered for the defendant.