W. S. McALEER, Appellant,

v.

McNALLY PITTSBURG MFG. CORP., Appellee.

No. 13950.

United States Court of Appeals Third Circuit.

Argued June 8, 1962.

Decided July 24, 1962.

James C. Larrimer, Pittsburgh, Pa. (Dougherty, Larrimer & Lee, Pittsburgh, Pa., on the brief), for appellant.

Earl F. Reed, Jr., Pittsburgh, Pa. (Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff sued his employer in a diversity action for breach of an employment contract. There was a motion on behalf of the defendant just prior to trial and renewed at the trial after the conclusion of the evidence on behalf of the plaintiff, to dismiss the action "because in the stipulation of counsel filed of record it appears that the maximum recov-

ery, exclusive of interest and costs is $9,-713.04." The motion was denied in both instances. The court later concluded that the motion should have been granted and the suit was dismissed for that reason. It was also held, "In the alternative, however, in the event that it is finally adjudicated that the court does have jurisdiction, then on the merits of the case, judgment is directed against the plaintiff, W. S. McAleer, and in favor of the defendant, McNally Pittsburg Mfg. Corp., together with costs."

We will deal first with the primary jurisdictional question. Plaintiff filed his complaint September 16, 1960. In it he alleged the diversity of citizenship between himself and the defendant and stated "that the amount in controversy exceeded $10,000, exclusive of interest and costs". He gave his wage loss as $8,950; loss by way of reduced annuity in the sum of $1,705.77 and for the third item of damage said in paragraph 10 "As a result of the termination of the employment contract by the defendant, plaintiff's group life insurance policy in the principal sum of $15,000.00 was cancelled by the insurance carrier."[1] The defendant in its answer generally denied "that the amount in controversy exceeds $10,000, exclusive of interest and costs". It admitted a reduction in plaintiff's annuity but "denies that such reduction resulted in damages in the sum of $1,705.77 or any other like amount."

As its affirmative "Third Defense" defendant said:

> "*This court is without jurisdiction based on diversity of citizenship for the reason that the amount in controversy does not exceed $10,000 by virtue of plaintiff's full time employment by another employer in mitigation of his lost wages from May 20, 1960, until the present time.*" (Emphasis supplied).

---

1. Plaintiff asks equitable relief with respect to the group insurance policy. Because the money damages allegedly rising out of this policy situation, as will appear later in this opinion, are sufficient to bring the total amount of damages sought above the jurisdictional minimum, we find no present need of examining the jurisdictional problem from the standpoint of this equitable cause of action involvement.

From the record the trial court's conclusion finally that "Plaintiff has not only failed to show good faith but his own testimony shows bad faith in making an assertion that the amount [in controversy] exceeded $10,000" is unjustified. The complaint accurately gave the gross salary claimed by plaintiff as amounting to $8,950. It then stated that plaintiff's annuity had been reduced by the contract breach $16 monthly for a total of $1,705.77. This figure was arrived at by plaintiff first from a letter to him from the defendant written by the president thereof April 13, 1960 which stated that "I estimate your monthly retirement income, if you commence receiving it on that date, will be about $105.00." At that time Mr. McAleer "was also sent the form of the insurance company for me to sign and designate, and it was made out to me to start the annuity I believe on the first of June, 1961." Plaintiff testified: "May I say this: That at the time this pension plan was put in, we were given a book, and in that booklet the benefits of the plan were set forth, and as near as I could calculate from what was given in that book, I knew that I was entitled to a greater amount than what was in this form that was sent to me at the time that I was discharged." And he arrived at the figure of $15 more by " * * * guessing or estimating from what was set forth in this pamphlet." The annuity estimated loss based on defendant's own figure and its book with which to calculate same plus the salary claim amounted to $10,655.77. This put the damages alleged well above the jurisdictional minimum without the inclusion of the life insurance policy loss. Those figures were not challenged by the special jurisdictional defense in the answer filed December 30, 1960. The sole alleged defect there raised was the assertion "that the amount in controversy does not exceed $10,000 by virtue of plaintiff's full time employment by another employer in mitigation of his lost wages from May 20, 1960, until the present time." It was only within a week prior to trial that defendant's wrong estimate of plaintiff's annuity was corrected in the stipulation of facts. That reduced the annuity loss to $678.14. . This plus the salary made $9,628.14. It was the plaintiff's attorney who presented the stipulation of facts to the court.

That stipulation contained a further particular, important here. This reads:

"4. As a result of plaintiff's cessation of employment on May 20, 1960, he received a life insurance policy with a cash value $84.90 less than the cash value such policy would have had at his normal retirement date of July 30, 1961 by reason of additional contributions which would have been paid by defendant."

The court took the above mentioned $84.90, added it to $9,628.14 which made the sum of $9,713.04 and arrived at the conclusion that the damages sought were less than the statutory minimum and so dismissed the suit. This overlooked plaintiff's contention regarding his group insurance policy. That was not wiped out by the stipulation which merely details the lower cash value of the policy received in exchange. Appellant argues regarding this that:

"Additionally, there existed the possibility of the death of the plaintiff within the contract period and the resultant loss of the life insurance coverage of $15,000. It is not clear whether the damages would have been the full coverage or the amount of the premiums necessary to purchase such insurance, and while this event did not occur, it was a real factor in the loss suffered by the plaintiff."

▆ The loss stated was to some extent contingent, but granting that, plaintiff contends convincingly that it did not appear to a legal certainty that his suable loss in connection with his policy was worth less than the amount needed to bring the money damage contended for above the $10,000 figure alleged. The

questions of whether replacement insurance could be obtained, its cost, etc., all enter into this damage problem. Even if the insurance situation changed since the action was started, in order to defeat the particular item there must be proof to a legal certainty that the plaintiff never was entitled on it to recover at least the $371.87, the balance needed to bring the cause within federal jurisdiction, St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). As stated in that landmark decision on jurisdictional amount, pp. 288, 289, 58 S.Ct. p. 590, "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls, if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." See Horton v. Liberty Mut. I- -. Co., 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961).

In the well regarded decision in this field of National Surety Corp. v. City of Excelsior Springs, _23 F.2d 573, 577, 156 A.L.R. 422 (8 Cir. 1941), after suit had been instituted plaintiff discovered that defendant had made certain payments and there was good excuse for his lack of knowledge. His statement of account had been retained by the defendant without protest. Despite the fact that the payments had dropped the account stated to less than the jurisdictional amount, the district court concluded that the amount claimed in plaintiff's complaint had been claimed in good faith. On appeal that finding was sustained and the court held that "We are of the view that the court correctly retained jurisdiction of the action."

In Berger v. Austin, Nichols & Co., 170 F.2d 330, 332 (7 Cir. 1948), Judge Minton for the court held "In the absence of bad faith, the allegations as to the jurisdictional amount become colorable merely when under the allegations of the complaint it is clear that plaintiff was never entitled to recover the jurisdictional amount."

■ Plaintiff's good faith cannot be gainsaid. Under the facts and law his claim should not have been dismissed as less than the jurisdictional amount. That brings us to the trial court's alternate finding against the plaintiff on the merits. As has been said that ruling was made at the end of the plaintiff's case.

The attention of the trial judge seems to have been directed more or less exclusively to the affirmative defense theory of mitigation of damages. The circumstance that plaintiff, apparently a most capable person in his profession, was able to obtain another position which eventually may have been better for him than that which he held with the defendant seems to have completely obscured the solid basis of plaintiff's suit and proof in support thereof.

According to the undisputed evidence, plaintiff was not eased out of his employment because of any fault of his. Defendant's business in Pittsburgh for various reasons was at a low ebb and expected to remain so for the next few years, therefore defendant decided to handle it from one or two of its other offices. It reduced plaintiff's salary and put him on part time routine work, primarily correspondence, to be handled from his home. Plaintiff testified that on October 24, 1959 he talked with Mr. McNally who approved of him accepting part time employment with the Peter Loftus Corporation. He advised Mr. McNally that Mr. Loftus had agreed that he could bring his McNally files in the Loftus office and " * * * devote what time I needed to McNally's work, and any extra time that I could put in with him would be agreeable to him. Mr. McNally asked me if my work with Loftus would be purely administrative, and I told him it would, and he agreed to the conditions. On the first of November, I went in with Mr. Loftus and carried out that arrangement."

The above evidence stands uncontradicted. As we have seen the district judge gave "Judgment for the defendant" at the end of the plaintiff's proofs. The court disregarded the testimony of the oral agreement between plaintiff and defendant of October 24, 1959, stating that " * * * when this man comes in and shows all this earnings that he has made, he shows a capable individual not having lost anything. He turned to some other employment when he got discharged, and that is all there is to it, at a better wage. So, judgment is entered."

Plaintiff had shown a definite contract with the defendant whereby he was to finish out a specific period of part time employment at a reduced wage. He gave evidence that later when he had an opportunity for other work which would permit him to continue with his duties for defendant, the latter through its president agreed that he could take on the other job. Peter Loftus, president of the Loftus Corporation, testified that when he hired plaintiff it was on a part time plan; that he knew at the time plaintiff was doing part time work for McNally which was acceptable to him.

Mitigation of damages had nothing to do with plaintiff's affirmative claim for salary from defendant. Whatever plaintiff earned from Loftus under the arrangement he had with defendant was no concern of the latter. Plaintiff was entitled to have his claim properly considered. And the defendant was entitled to present its defense including mitigation of damages to same and have it properly considered.

The judgment of the district court will be reversed and the case remanded for trial on the merits.