W. S. McALEER, Appellant,

v.

McNALLY PITTSBURG MANUFACTUR-
ING COMPANY, Appellee.

No. 14499.

United States Court of Appeals
Third Circuit.

Argued Dec. 12, 1963.

Decided March 3, 1964.

Rehearing Denied March 31, 1964.

James C. Larrimer, Pittsburgh, Pa.,
(Dougherty, Larrimer & Lee, Pittsburgh,
Pa., on the brief), for appellant.

274

Earl F. Reed, Jr., Pittsburgh, Pa., (Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This non-jury litigation is before us for the second time. It is a diversity action by plaintiff employee against his employer for breach of an employment contract extending from April 14, 1959 to July 30, 1961. In the first trial at the conclusion of plaintiff's affirmative case, his claim was dismissed because of the court's decision that it was for less than the statutory amount. The trial judge additionally held: "In the alternative, however, in the event that it is finally adjudicated that the court does have jurisdiction, then on the merits of the case, judgment is directed against the plaintiff, W. S. McAleer, and in favor of the defendant, McNally Pittsburg Manufacturing Company, together with costs." We concluded that the money damage contended for exceeded $10,000, exclusive of interest and costs.

With respect to the alternative finding, as we stated, 3 Cir., 307 F.2d 220, 223, "[t]he attention of the trial judge seems to have been directed more or less exclusively to the affirmative defense theory of mitigation of damages." We found at p. 224 on the undisputed evidence, that "[p]laintiff had shown a definite contract with the defendant whereby he was to finish out a specific period of part time employment at a reduced wage." Then we said at p. 224:

"Mitigation of damages had nothing to do with plaintiff's affirmative claim for salary from defendant. Whatever plaintiff earned from Loftus under the arrangement he had with defendant was no concern of the latter. Plaintiff was entitled to have his claim properly considered. And the defendant was entitled to present its defense including mitigation of damages to same and have it properly considered.

"The judgment of the district court will be reversed and the case remanded for trial on the merits."

After the second trial the court filed an opinion to be "regarded as including the Findings of Fact and Conclusions of Law * * * ", together with an order directing that judgment be entered against the plaintiff and in favor of the defendant.

In that opinion the court found specifically that there was a contract for the particular employment involved. The opinion states, 214 F.Supp. 740:

"Plaintiff W. S. McAleer had been a valued long time employee of defendant, McNally Pittsburg Mfg. Corp., and in charge of its regional office in Pittsburgh, Pennsylvania. In the Spring of 1959 defendant transferred the major portion of its activities from Pittsburgh, Pennsylvania to Pittsburg, Kansas. Plaintiff's salary with defendant had been approximately $14,000.00 per year with an annual bonus which ranged from $7,000.00 to $16,000.00 per year in addition to his salary. On April 14, 1959, Mr. McNally, for the defendant, wrote two letters to the plaintiff. In plaintiff's exhibit 1, the subject of the letter is styled 'Closing of Pittsburgh Office'. Mr. McNally reviews the reasons why the business is to be transferred away from Pittsburgh. In this letter he says:

'By a separate letter I am proposing that you continue to represent us in Pittsburgh from your home.'

He discusses other features of the Pittsburgh business, mainly with regard to transferring certain files to plaintiff's home in order to service two accounts, but says:

' * * * your home files should be kept to the barest minimum.'

In the second letter, plaintiff's exhibit 2, the question of plaintiff's employment is dealt with specifically. Mr. McNally refers to the other

letter of the same date indicating that plaintiff should restrict his activities to the Koppers and Wilputte accounts. He then says:

'I propose that this arrangement continue until your retirement, which appears to be July 30, 1961, presuming that the volume of coke oven machinery work continues at some respectable level.'

The letter proposes his salary but reads:

'* * * to reflect your reduced activities, to $500.00 per month.'

It also says that travel expenses will be reimbursed and that plaintiff's interest in the Equitable Retirement Plan,

'* * * is vested in you and that your retirement pay will be unimpaired under any circumstances.'

The closing paragraphs bring up the thought that the proposal to plaintiff may not be attractive and that other employment might be desirable.

"The written proposals made by defendant in the two letters were not accepted by plaintiff. However, after oral conversations defendant increased the salary offer to $625.00 per month, and plaintiff orally accepted the proposition offered by defendant."

And the defendant in its brief attests to this saying, "The offer was orally accepted by the plaintiff with an agreed salary of $625.00 per month."

■ Later on the court talks about a novation in the agreement. This seems to be based largely, according to the opinion, on Mr. McNally's (defendant) statement that " * * * our relationships would be reviewed again in a few months' time after we saw how this new arrangement with Peter Loftus worked out." There is nothing anywhere that this was agreed to between the parties. Nor is there the slightest indication that

there was a genuine novation of the explicit agreement as above found by the court. Finally, the opinion states, "In summary then, under all of the evidence, I find defendant at no time offered an employment contract to plaintiff commencing April 14, 1959, and running to and terminating on July 31, 1961."

It seems to us that the above is directly contrary to the court's explicit prior finding. In any event our own examination of the record reveals no basis for an assertion that the contract found by the court did not exist and no basis for a valid conclusion that it had been changed or abrogated.

■■ This brings us to the question of mitigation of damages which was before the district court in both trials. The necessary data concerning it is fully before us. We agree with both sides that it should be disposed of by us at this time. Under the applicable Pennsylvania law a person who is employed for a specific term of service and is improperly dismissed beforehand is entitled to recover for the whole term. As Justice Strong said in King v. Steiren, 44 Pa. 99, 105 (1862) (agreeing with the English rule):

"[T]he plaintiff is *prima facie* entitled to the stipulated compensation for the whole time. If so, the burden of proof in regard to his employment elsewhere, or his ability to obtain employment, must necessarily rest on the defendant. All evidence in mitigation is for a defendant to give. In its nature it is affirmative, and hence it is for him to prove who asserts it."

See also Emery v. Steckel, 126 Pa. 171, 175–176, 17 A. 601, (1889); Gordon v. Tomei, 144 Pa.Super. 449, 19 A.2d 588 (1941); Savitz v. Gallaccio, 179 Pa. Super. 589, 595, 118 A.2d 282 (1955); Williams v. Masters, Mates & Pilots of America Local No. 2, 384 Pa. 413, 422, 120 A.2d 896 (1956); 5 Williston on Contracts, § 1360 (Rev.Ed.1939). The above stated affirmative burden requires the defendant to prove "with reasonable certainty" the amounts which were made.

or could have been made in mitigation. Blount v. Empire Mutual Insurance Co., 413 Pa. 100, 196 A.2d 334 (1964).

Prior to May 20, 1960, McAleer had been concurrently employed by McNally at $625 per month, and by Loftus at $50 a day, with the approval of McNally. McAleer had been devoting between 50%–75% of his time to Loftus work, but when McNally terminated his contract with him on May 20, 1960, he increased his working hours at Loftus to "practically 100%", at an increased rate of $75 a day. However, even after McNally's letter of termination, McAleer continued, with McNally's assent, to perform for McNally whatever business or correspondence came to him. It was some five months after the date of termination that McNally stopped the routing of mail to McAleer. Though, as late as September 1961, incidental pieces of mail continued to come to him, which he duly rerouted to McNally, the record convinces us that at least as of January 1, 1961, McAleer was devoting "full" or 100% of his time to Loftus. It was then that he became salaried with Loftus at $21,000 a year.

█ █ As to his contract with McAleer, McNally testified that even though McAleer was to be compensated at $625 a month, the work McAleer would be doing for him would become less and less as his term of employment advanced to July, 1961. Thus it is a permissible inference that within the framework of their contract the amount of work he could do for Loftus could properly increase during his term of service with McNally. It is likewise clear that at least as of January 1, 1961, when McAleer began working "full time" with Loftus, some of the time then spent working for Loftus was made available because he was no longer functioning for McNally. Thus the damage McAleer suffered by McNally's breach of his employment contract was to some extent mitigated. As Judge Bard indicated in Russell v. Barnes Foundation, 52 F.Supp. 827 (E.D.Pa.1943) at p. 829, in arriving at the extent of mitigation, it must be

determined what was "the extent of plaintiff's earnings and earning power during the unexpired term of the contract and the extent, if any, to which such earnings and earning power are in excess of what they would have been if plaintiff had been permitted to continue performance of his contract of employment during that period." See also Sanders v. Schenley Products Co., 108 F.2d 23 (2 Cir. 1939). While it is the defendant's burden to show the extent of mitigation, see supra, which burden here was not met, it is apparent that the defendant demonstrated some mitigation. The fact that a neat mathematical computation is not possible in this case, should not be fatal to the defendant. The situation before us is somewhat unique in that it deals with concurrent employments with contemplated increases and decreases in work loads. To that extent, it demands a sliding scale of mitigation, which borders on the speculative, since neither McNally, McAleer nor we can ascertain what McAleer would have had to do for McNally for the balance of his term of service. But the record indicates that he would be doing something, that in any event, he would not be working exclusively or totally for Loftus. Having studied the evidence in detail, we believe that we have all the facts necessary to make as good an approximation as can be accomplished under the circumstances. And it is proper in a problem such as this to do so. See Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2 Cir. 1930); Nichols v. S. E. C., 211 F.2d 412 (2 Cir. 1954); Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1934). What we must determine is the difference statistically and factually between "practically 100%", i. e., the workload of McAleer at Loftus, while he was still performing for McNally, despite the termination letter and the breach,—and "100%", the workload at Loftus after January 1, 1961 at which time it appears he did no significant work for McNally. With that as our basis, complemented by our total impression of the record, we conclude that 10% of

plaintiff's earnings at Loftus from January 1, 1961 to July 30, 1961 represented an "irreducible minimum" of work done for Loftus, made available because of defendant's breach and therefore in mitigation of damages McAleer incurred by reason of the breach.

From January 1, 1961 to the end of that year, McAleer was paid $21,000, seven months of which would have coincided with his employment contract with McNally, ten percent of which would represent mitigation. This amounts to $1225 and represents a fair approximation and an irreducible minimum of the extent to which the plaintiff's damages were mitigated. The term of service with McNally from May 20, 1960 to July 31, 1961, as agreed, would have brought McAleer $8,950 at the rate of $625 a month for fourteen plus months. This loss, we hold now, was mitigated to $7,725.

Also stipulated was the plaintiff's actual loss of retirement benefits which would cost him $678.14 to replace.

Plaintiff also alleges damage from the loss of coverage of a $15,000 life insurance policy during the period from May 20, 1960 to July 31, 1961. In measuring this item of plaintiff's damage, we are guided by the thoughts of the court which decided Mutual Reserve Fund Life Ass'n v. Ferrenbach, 144 F. 342 (8 Cir. 1906). It was said therein at p. 343:

"Modern times have witnessed the addition of many new features to policies of life insurance resulting in premiums of greater amount and consequently in an increased equity or value in the policies themselves, and the particular rules for ascertaining the loss sustained by policy holders through the wrongful cancellation of their policies must vary as the characters of the policies themselves vary. In some cases much may also depend upon the physical condition of the insured, whether he remains an insurable risk or not, and whether insurance of like character and value to that cancelled can be obtained in some other responsible company and what the cost may be. But in every case of this character the dominant idea is compensation—reimbursement for the actual loss sustained—and the measure of recovery which fits nearest and most closely thereto is the one that should be adopted. The award should be precisely commensurate with the injury suffered neither more nor less."

The Pennsylvania law as applicable to the question at hand is only collaterally helpful. It holds that one with a policy in an insurance company which wrongfully revokes the policy, may elect whether to enforce the contract or treat it as rescinded and recover for the breach, and if he takes the latter course, he may recover back the full amount of the premiums paid thereon with interest, without deduction for the protection afforded the assured, while the policy was in effect. American Life Insurance Co. v. McAden, 109 Pa. 399, 1 A. 256 (1885); Gaskill v. Pittsburgh Life and Trust Co., 261 Pa. 546, 104 A. 775 (1918); Walsh v. Aetna Life Insurance Company, 352 Pa. 429, 43 A.2d 102, 160 A.L.R. 620 (1945). In Walsh, however, the court denied the plaintiff relief because he in effect abandoned his policy by deliberately letting the premiums due, go unpaid. The cancellation was held there justifiable. See Mutual Life Insurance Co. of New York v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788 (1904).

The policy at issue is one of group insurance. This kind of insurance contract is made by the insurer and the employer or someone in an analogous position. Of its nature, it affects four parties: the insurer, the insured, the employer and the beneficiary. McAleer, the insured has alleged and proved that, as a result of the termination of the employment contract by McNally, the employer, his group life insurance policy in the principal sum of $15,000 was cancelled by the insurance carrier. Plaintiff contends that the measure of damages should be, in part, the cost of such life insurance coverage,

278

$1,167.60, i. e., the amount it would cost him to go out and obtain insurance coverage for the balance of the employment contract. As we see it, in this instance plaintiff failed in his proof to show damage. Pennsylvania law as it now stands, does not recognize the loss of protection as recoverable damage. Walsh v. Aetna Life Ins. Co., supra; Gaskill v. Pittsburgh Life and Trust Co., supra. In this appeal, the plaintiff survived July 31, 1961, the date which represented the end of his employment contract with McNally. If he had not survived, the result might have been otherwise, but as it is, he suffered no loss or damage, cognizable in law, in so far as life insurance protection is concerned. Nor could he ask rescission of the insurance contract, since he was not a party thereto—or demand the return of the premiums paid (Gaskill v. Pittsburgh Life and Trust Co., supra) since he never paid them. It is uncontradicted that McNally paid the premiums.

 Another result might be dictated if McAleer had gone out and purchased that protection which but for the wrongful termination would have been paid by McNally; or if McAleer had been refused policies elsewhere, because of health reasons for example. The plaintiff makes plain what it would have cost him for insurance protection elsewhere, but fails to establish that either he purchased the insurance or that he was refused it. With this fatal gap in his proof, plaintiff failed to show he was damaged in that regard.

However, the plaintiff is entitled to damages to the extent that he received a life insurance policy with a cash surrender value $84.90 less than it would have been on July 30, 1961, the date on which his contract with McNally ordinarily should have terminated. In holding now that the plaintiff is entitled only to $84.90 as damages for the cancellation of the insurance policy, we do not depart from the law of the case as outlined by us when it was previously before us. McAleer v. McNally Pittsburg Manufacturing Company, 307 F.2d 220 (3 Cir.

1962). There we decided that it did not appear to a legal certainty that the claim of McAleer was less than the required jurisdictional amount. We said that his claim arising from his loss of insurance coverage was not clearly lacking in merit, to the extent of $371.14, the amount that would give the plaintiff the proper jurisdictional amount. We hold here simply that the plaintiff failed in his proof in this regard.

Because of McNally's breach, the plaintiff suffered compensable damage in the amount of his loss of earnings ($7725), the loss of certain retirement benefits ($678.14) and the loss in cash value of his insurance policy ($84.90).

The judgment of the district court will be reversed. The cause will be remanded to that court with directions to enter judgment for the plaintiff and against the defendant in the sum of $8,488.04 with proper interest thereon.