**BERGER v. AUSTIN, NICHOLS & CO.**

No. 9571.

United States Court of Appeals Seventh Circuit.

Oct. 26, 1948.

James T. Mullaney, of Chicago, Ill., for appellant.

Paul H. Moore, Douglas C. Moir and Edward J. Wendrow, all of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The plaintiff, a citizen of Illinois, appeals from an order of the District Court dismissing his complaint against the defendant, a Delaware corporation, for want of jurisdictional amount.

The plaintiff sued the defendant for commissions alleged to have been earned by him upon the sale for the defendant of certain liquor. The plaintiff was employed as salesman for the defendant, pursuant to an oral contract of employment. The plaintiff alleged in the complaint that at the time in question he was employed on a straight 3½% commission "of the gross sales price received by defendant upon sales made for its benefit by plaintiff." He further alleged that "On October 8, 1945, plaintiff procured for the benefit of defendant sales for 6,300 cases of alcoholic liquor * * * and said sales and purchases were accepted by defendant and the purchasers for which sales of said 6,300 cases defend-

ant would receive $331,569.00 and on said date plaintiff became entitled to the sum of $11,604.91 as commissions on said sales." It is then alleged that the defendant had delivered 2,075 cases of whiskey on two written contracts upon which it had paid the plaintiff his 3½% commission; that the defendant was obligated under the contracts to deliver 4,225 more cases at the contract price, for which the defendant received or should receive $222,361.75; and that the defendant was indebted to the plaintiff for commissions on this sum of 3½% or $7,782.66, with interest thereon from the date of the contracts. The prayer was for $8,700.

The defendant admitted the employment of the plaintiff until January 1, 1947, when, the defendant alleged, the plaintiff voluntarily terminated his employment; that the plaintiff procured the two written contracts which the defendant accepted; that pursuant to said contracts, as modified, the defendant had delivered 2,075 cases, had received the contract price therefor, and had paid the plaintiff as commission thereon 3½% or $3,822.25; and that it had refused payment of the balance of the commissions claimed by the plaintiff. The defendant denied the other allegations of the complaint as set out above, as well as the jurisdictional amount.

On these pleadings the parties went to trial. The trial court found that the plaintiff's claim that the amount in controversy exceeded the sum or value of $3,000 was merely colorable, and therefore dismissed the plaintiff's complaint for want of jurisdiction.

The evidence, consisting of letters written by the defendant's officials and the defendant's employment application form executed by the plaintiff, did not spell out the details of the plaintiff's contract of employment, and much of it rested in parol. The letters referred to the employment of the plaintiff and designated his compensation as a "commission on sales" in addition to other considerations. Beneath the plaintiff's signature on the written application was a recital that "If Accepted Applicant Agrees to Accept the Conditions of the Austin, Nichols & Co., Sales Contract."

No form of sales contract was introduced, and the only "sales contracts" of the defendant in evidence were the two procured by the plaintiff. They consisted of letters written by the defendant to a hotel chain which operated the Blackstone and Drake hotels in Chicago. Each letter started with the statement: "This is to confirm our sale to you of" so many cases of whiskey. These letters were accepted in writing by the purchaser and were the contracts admittedly procured by the plaintiff and upon which the defendant was still delivering whiskey at the time of the trial. The whiskey was to be delivered in monthly installments at prices and other terms subject to certain stated contingencies. The quantities as well as the prices were subsequently modified by later agreements.

It is clear that the plaintiff's position as reflected by the allegations of his complaint was that when he procured an order which the defendant accepted, he had earned his commission and it was then payable. This the defendant denied. On the trial the plaintiff did not testify that his commission was payable when he procured a contract which was accepted by the defendant. At no place in his testimony or in any other testimony introduced by the plaintiff did it appear when the commission became due and payable. On cross-examination the plaintiff testified as follows: "It was the customary procedure with Austin, Nichols & Co. to base those statements on actual deliveries, so far as I know. The statement would be on sales and deliveries for the prior month, according to the method of doing it that prevailed with Austin, Nichols. I first made a demand for my entire commissions on The Drake and Blackstone Hotel contracts on January 2, 1947."

The defendant contended and in answer to interrogatories averred that "The commission was to become payable only as merchandise was delivered to respective accounts while being serviced by plaintiff." The defendant also introduced statements which it had issued to the plaintiff for the months of October and November 1945, which in connection with other evidence can fairly be said to indicate that payments were made after delivery of the merchandise.

The plaintiff did not allege anything as to how or why his employment was terminated. The defendant alleged in its answer that the plaintiff voluntarily resigned. The evidence shows that on January 2, 1947, the plaintiff was summoned to the defendant's office and shown a letter from the defendant's main office in Brooklyn, New York, the pertinent parts of which read as follows:

"Brooklyn 11—New York
December 27, 1946
" 'Office of the President
Mr. W. H. Channer,

"Dear Mr. Channer:

"I have been noticing with some apprehension that your Mr. Berger is running steadily in the red. He is not making his draw. Now it seems to me with the new set-up and broadening the number of outlets on Grant's Scotch and cutting down the amount to each outlet, that you probably should have two men instead of one because your average order is not going to be so big and, as I understand it, Mr. Berger is the so-called type of salesman that handles big accounts and is not willing or eager to call on places where he might get a $60 or $100 order. The Grant people are anxious to broaden out our sales of Grant's Scotch and we concur completely in the idea and if Mr. Berger has not been able to make his draw in the last two or three months, I am very doubtful that he will be able to make it in the early months of 1947.

"I presume you could get 2 men with a guaranteed draw of $50 a week and with an opportunity to sell our entire line it should appeal to them sufficiently anyway to have them make a trial, if they do not get their feet on the ground in the course of six months, I think it would be necessary to make a change."

The plaintiff testified that when this letter was shown to him, he said to Channer, the representative of the defendant to whom the letter was addressed and who had hired him, "Well, this looks as if I was discharged yesterday." Channer replied, "Well, I can't help it; this was done by the New York office." The plaintiff then asked about his Drake Hotel and Blackstone Hotel contracts. After reading the letter again, Channer phoned the New York office and then turned to the plaintiff and said, "I am sorry, the company will pay you no further commissions on those. When a man is through with Austin, Nichols, the commissions cease." Channer did not deny this conversation. How the termination of the plaintiff's employment was accomplished and the effect of such termination were not issues except for the isolated allegation in the answer that the plaintiff voluntarily resigned. The answer did not allege that it was agreed by the parties that that terminated the plaintiff's right to further commissions.

▆▆▆ In this state of the record we cannot agree with the District Court that the amount alleged to be in controversy was colorable in the sense of having been made in bad faith. Nor do we think that it is apparent to a legal certainty from the face of the pleadings or the proofs that the plaintiff never was entitled to recover that amount. Although the plaintiff failed to sustain the allegation in his complaint that his commissions were payable at the time the contracts of sale were procured by him, failure of this proof would not oust jurisdiction. Still open was the question of what the plaintiff might be entitled to after his employment was terminated and this question, it seems to us, was not thoroughly considered by the trial court. In the absence of bad faith, the allegations as to the jurisdictional amount become colorable merely when under the allegations of the complaint it is clear that the plaintiff was never entitled to recover the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L. Ed. 845; National Surety Corp. v. City of Excelsior Springs, 8 Cir., 123 F.2d 573, 156 A.L.R. 422.

The District Court erred in dismissing the complaint for lack of jurisdiction. We think a new trial should be granted to enable the plaintiff to present his contention in full. The District Court is directed to restore the case to the docket and to grant the plaintiff a new trial.