**E. Michael JOYE, Plaintiff,**

v.

**FIRST COMMODITY CORPORATION OF BOSTON, Defendant.**

Civ. A. No. 78–1732.

District Court of United States,
D. South Carolina,
Columbia Division.

Dec. 14, 1978.

E. Michael Joye, pro se.

Charles W. Knowlton and Hamilton Osborne, Jr., Columbia, S. C., Jeffrey S. Rosen, Stoppelman, Rosen & Zweibel, Washington, D. C., for defendant.

ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT

HEMPHILL, District Judge.

By complaint filed October 5, 1978, plaintiff, appearing *pro se*, and a citizen of South

Carolina, claims damages in excess of $10,-000 against defendant, a Massachusetts corporation, claiming fraud in violation of 7 U.S.C. § 6b, (A), (B) and (C) [1], together with regulation 32.9 in violation of § 39–5–20 [2], S.C.Code of Laws, 1976, anno. Before this court, for review and decision, is (1) defendant's motion of November 6, 1978 to dismiss, or, in the alternative, to change the venue of this case from the District of South Carolina to the District of Massachusetts, and (2) plaintiff's motion for default judgment filed November 15, 1978. A chronology of events is proper to orient the reader of this Order.

It appears that the complaint in this case was served on October 16, 1978 (according to the Marshal's receipt and return on USM–285). The time for answering or denying under Rule 8(b), Federal Rules of Civil Procedure, could, by calculation, expire on November 5, 1978, as Rule 12(a) provides for an answer within twenty (20) days. The affidavit of defendant's counsel, not controverted, states that counsel had researched the matter and decided, that, instead of answering, that he should raise jurisdictional issues as provided by Rule 12(b)(1) and (2) [3] of the Federal Rules of Civil Procedure, as he did not think that the court had jurisdiction of the subject matter by virtue of alleged failure of the controversy to meet the diversity requirements [4] and failed to have personal jurisdiction over the defendant by virtue of the fact that defendant claimed no contacts within South

---

1. 7 U.S.C. § 6b, (A), (B) and (C) provides: Contracts designed to defraud or mislead; bucketing orders; buying and selling orders for commodities.

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) to cheat or defraud or attempt to cheat or defraud such other person;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person  .   .   . .

2. § 39–5–20, S.C.Code, 1976, anno., provides: Unfair methods of competition and unfair or deceptive acts or practices unlawful; application of interpretations of Federal act.

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended. ·

3. Fed.R.Civ.P. 12(b)(1)(2) provides: Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on Pleadings.

(b) *How Presented.* Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person  .   .   . .

4. 28 U.S.C. § 1332(a) provides: Diversity of citizenship; amount in controversy; costs.

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

Carolina sufficient to give jurisdiction in this state (since the District of South Carolina encompasses the whole state). Thereafter, on November 16, 1978, which was approximately thirty (30) days after service of the complaint, plaintiff filed his motion for entry of default judgment. There is considerable controversy about when the motion as to jurisdiction was mailed; it appears that it was mailed on the 6th day of November, 1978. It so happened that November 5, 1978, was on Sunday and therefore the date for service was on the following day. On November 7, 1978, the South Carolina counsel served on plaintiff the same motion, personally.

██ Initially, plaintiff argues that a default judgment should be entered because there is no material issue of fact in the case. If the jurisdictional motion fails, defendant should be allowed to answer and at that time it would be determined whether or not a material issue of fact exists in the case. It is rather difficult for this court to imagine a court determining that there was no issue of fact when the issues have not been joined by virtue of jurisdictional pleadings. Of course, if the court had no jurisdiction, there was no duty on the part of the defendant to answer, and the reason for Rule 12(b) is apparent because there is no reason to clutter up the court with answers if the court has no jurisdiction.

Since the court will rule hereinafter it does have jurisdiction, the court will pass on the issue of default judgment, initially.

Default has not been entered in this case, so the issue before the court is not a motion to vacate a default judgment. The motion is to enter a default judgment, but if it were a motion to vacate a judgment taken by default, it would be addressed to the sound discretion of the court. *Consolidated Masonry and Fireproofing, Inc. v. Wagmon Construction Co.*, 383 F.2d 249 (4th Cir. 1967); *West v. Gilbert*, 361 F.2d 314 (2nd Cir. 1966); *cert. denied* 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143; *Swam v. United States*, 327 F.2d 431 (7th Cir. 1964) and other cases. The court has the same discretion in entering a default judgment because

as courts have generally ruled in vacating default judgment,

The rules authorizing courts to vacate default judgments exist to implement the desirable legal objective that cases be decided on their merit. Thus those rules should be liberally construed in order that litigants be given an opportunity to be heard, and given their day in court so that justice may be served. Accordingly, only in cases where a party has evidence of disregard for the judicial process, or a hardship will result should the courts refuse to vacate a default judgment. *General Telephone Corp. v. General Telephone Answering Service*, 277 F.2d 919 (5th Cir. 1963); *Patafaup [Patapoff] v. Volsted, [Vollstedt's] Inc.*, 267 F.2d 863 (9th Cir. 1959) and other cases.

The court has carefully examined the chronology and pleadings in this particular case. The court has seen few annotations on Rule 8(f) which provides a "all pleadings shall be so construed as to do substantial justice."

Defendant is entitled to his day in court. This court has ever been cautious to enter a default judgment or to refuse to vacate a default judgment, where the action of the court would deny a litigant his day in court.

The motion for default judgment is denied.

██ In support of its motion to dismiss, defendant positions that the amount in controversy is less than $10,000. As is stated in *St. Paul Mercury and Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, a diversity action should not be dismissed for lack of jurisdiction unless it affirmatively appears that the jurisdictional amount does not exist. The court reasons that the jurisdictional amount exists here, at this stage in the proceeding, for the following reasons.

It is obvious, from the information now before the court, that the actual out-of-pocket expenses do not exceed the sum of $10,000. Since the renowned case of *St. Paul Indemnity Company v. Red Cab Company*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed.

845 [5], a plethora of exploratory and at times diverse opinions have been issued by ever-zealous appellate and trial courts. Of fairly recent vintage we find a case involving actual and punitive damages, of similarity in the fact that the two kinds of damages were sought, although not an identical case. In *Wood v. Stark Tri-County Building Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973), the court stated:

> The determination of the amount in controversy is fairly uncomplicated when the plaintiff seeks liquidated damages, the amount in controversy being the total of the liquidated damages. In the unliquidated damages situation, as in the present case, the courts generally apply a good faith standard to the plaintiff's complaint. If the plaintiff's claim is in good faith for an amount higher than the jurisdictional amount, then jurisdiction exists in the federal court unless it appears to a legal certainty that more than the jurisdictional amount could not be recovered by the plaintiff. (Citing *St. Paul Mercury Indemnity.*)

This court adopts the reasoning of the Fifth Circuit in *Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*, 417 F.2d 129, 131 (5th Cir. 1969) where the court said that the amount in controversy is measured by the amount claimed in good faith by the plaintiff rather than by the amount ultimately recovered.[6] We face here, in the invitation of the motion, that we deny plaintiff his right to proceed in Federal court, his chosen forum, without giving him a chance to present the merits of his case before a court and a jury. The court is asked to say that, to a legal certainty, the unliquidated claim is for less than the jurisdictional amount, or that, to a legal certainty the court finds that the claim of the requisite jurisdictional amount is not pursued in good faith.

The court is quick to accept the fact that dollar requirement in federal litigation poses a question which is sometimes difficult to determine. Nevertheless, Congress has enacted this jurisdictional feature and it is not for this court or any other court to avoid its implication by judicial decree or judicial legislation. It is so well set forth in Federal Practice and Procedure:[7]

> This determination often requires the striking of a sensitive balance between two competing policies. On the one hand, a case should not be entertained by a federal court if there is no basis for the plaintiff's assertion that the jurisdictional amount requirement has been satisfied; on the other hand, a party should not be unduly delayed or deprived unfairly from securing a trial on the merits in a federal forum by a preliminary jurisdictional determination.

Seeking the balance that this determination should project, this court cannot say *for a legal certainty* that there is no basis for plaintiff's assertion that the jurisdictional amount requirement is met, and the preliminary jurisdictional determination at this point might well deprive plaintiff of a forum he chose, and which is his if he meets the requirements. Of course, it would be preferable if the court had more authority in the matter at issue, but sometime the expansion of authority has the impact of injustice. As stated in *Barry v. Edmunds*, 116 U.S. 550, 559, 6 S.Ct. 501, 506, 29 L.Ed. 729 (1886):

> It might happen that the judge, on the trial or hearing of a cause, would receive impressions amounting to a moral cer-

---

**5.** At page 288 of the U.S. Reports, at page 590 of the S.Ct. and at page 848 of the L.Ed., Mr. Justice Roberts, writing for the Court, declared: "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

**6.** "Whether the claim is made in good faith is 'measured by the standard of legal certainty that the plaintiff cannot recover as much as the jurisdictional amount,' . . . . . since dismissal for lack of jurisdiction is justified only when it appears to a legal certainty that the plaintiff cannot recover at least that amount." [131]

**7.** Wright and Miller, 1976 ed., West Publishing Co., Vol. 14 § 3702, p. 369.

tainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of its jurisdiction, on this account, "shall appear to the satisfaction of said circuit court."

The rationale of this is obvious. To those trial judges on the district bench who have had trial experience and repeatedly face these age-old questions, when experience and judgment of the court dictate that the jurisdictional amount does not prevail, it should not prevail. It readily follows that the reasoning for requiring determination to a legal certainty, and the further reasoning we find an examination of good faith, are among those checks and balances that justice demands of the trial judge's feelings.

This court recognizes that once the jurisdictional amount is challenged, by a motion to dismiss for a lack of diversity jurisdiction such as here exists, the burden of proving the existence of jurisdictional amount, by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount, rests on the party who seeks the jurisdiction of the federal forum. *United States v. Southern Pacific Transportation Co.*, 543 F.2d 676 (9th Cir. 1976); *King v. Morton*, 172 U.S.App.D.C. 126, 520 F.2d 1140 (1975); *Network Project v. Corp. for Public Broadcasting*, 398 F.Supp. 1332 (D.C.D.C.1975), affirmed in part, reversed in part, 561 F.2d 963. Because *Hatfield v. Mullins Ford, Inc.*, 383 F.Supp. 278 (E.D.Va.1975) was affirmed by the Fourth Circuit (530 F.2d 968) this court examined that opinion. It appears that the claim there was for a liquidated amount where it could be definitely ascertained as to a legal certainty that the jurisdictional

amount did not exist. Here we have a claim that is large and unliquidated, arising out of a tort, not out of a contract, thus the distinction.

This court is required to make the determination necessary here but again it may rely on Wright and Miller: [8]

> The determination of the value of the matter in controversy for purposes of federal jurisdiction of the federal question to be decided under federal standards. However, diversity cases in federal courts must look to state law to determine the nature and extent of the right to be enforced. This includes applying the forum state's rules regarding the measure of damages and the availability of special and punitive damages.

Again we are met with the realities of the case before us in which punitive damages have been asked, and if the complaint is to be regarded as true, the fraudulent acts of defendant are of such proportion that punitive damages will follow if the jury is convinced of the truth of the matters set forth in the complaint. This realization is somewhat of a caution flag against an early dismissal at the threshold of an action which is nearing trial time in a forum which can accommodate and has a disposition time in civil cases of six months or less. Although it might be well for these cases if the court were to go into detail as a threshold question, the court cannot assume this burden without considerable more manpower and somewhat formal guidelines. South Carolina allows punitive damages. Punitive damages as well as liquidated damages were sought at the commencement of the action in federal court.

It has been held sufficient to establish the jurisdictional amount if there is a probability that the value of the matter in controversy exceeds such amount. *Jeffries v. Silver Cup Bakers, Inc.*, 434 F.2d 310 (7th Cir. 1970). Of course, if this court were to determine that the claim was "colorable" [9], the court would not have jurisdiction. *Bell*

---

8. Ibid. Section 3702, page 376.

9. This has the connotation of fiction insofar as the jurisdictional amount is concerned.

*v. Preferred Life Assurance Society, Montgomery,* 131 F.2d 516 (5th Cir. 1943); *Manning v. U. S. Fidelity & Guaranty Co.,* 146 F.2d 128 (5th Cir. 1945). It has been said that in the absence of bad faith, allegations as to the jurisdictional amount become colorable merely when, under the allegations of the complaint, it appears that plaintiff was never entitled to recover the jurisdictional amount. *Burger v. Austin Nichols & Co.,* 170 F.2d 330 (7th Cir. 1948).

Because of the aforesaid, the court on balance finds that at the time of the filing of the complaint, the jurisdictional amount was claimed, and there is no legal certainty that the jurisdictional amount did not exist, nor is that legal certainty present today and the court finds no bad faith in the claim.

■ Defendant's next position is that the court does not have jurisdiction of the person of the defendant. This court will refuse this motion on the basis of the decision of the United States Fourth Circuit Court of Appeals in *Hardy v. Pioneer Parachute Co., Inc.,* 531 F.2d 193, 195. In that case, Hardy brought suit to recover damages for injuries she received while using a parachute made and sold by the defendant. She has set a jurisdiction under § 10.2–803(1), S.C.Code, 1962, anno.[10] Hardy bought the parachute from a distributor of defendant, a Delaware corporation, which owns no property in South Carolina, maintains no office or place of business and has no agents or employees, or salesmen, distributors or franchises in this State. It did advertise in two nationally circulated magazines which reached subscribers in South Carolina and they did take the order and sold the parachute in response to a telephone call from South Carolina. In reversing the district court, the Fourth Circuit ruled:

Thirty years ago the Supreme Court ruled "that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" . . .. A single transaction is a sufficient contact to satisfy this standard if it gives rise to the liability asserted in the suit. . . . Modern transportation, communication, and the national flow of commerce have contributed to the recognition that states have a legitimate interest in providing means for their citizens to seek redress against foreign corporations that ship allegedly defective products into the state. No unconstitutional burden is imposed on a foreign corporation by requiring it to defend a suit in a forum located in a state where it has advertised and sold a product whose use gave rise to the cause of action. We conclude, therefore, that the due process clause does not preclude entry of a judgment against Pioneer and Parchutes because they did not have more extensive contacts with South Carolina. 531 F.2d, at 195.

---

**10.** § 36–2–803, S.C.Code, 1976, anno. provides:
Personal jurisdiction based upon conduct.

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
   (a) transacting any business in this State;
   (b) contracting to supply services or things in the State;
   (c) commission of a tortious act in whole or in part in this State;
   (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or

   (e) having an interest in, using, or possessing real property in this State; or
   (f) contracting to insure any person, property or risk located within this State at the time of contracting; or
   (g) entry into a contract to be performed in whole or in part by either party in this State; or
   (h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.
(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him, and such action, if brought in this State, shall not be subject to the provisions of § 15–7–100(3).

In the case at bar, defendant advertised copper options, which is the subject matter of the suit, which plaintiff purchased from defendant, in the *New York Times*, and possibly other publications which reached subscribers in South Carolina. As soon as plaintiff had made the inquiry, defendant arranged the sale of the copper option, the plaintiff acted as distributor in *Hardy*. In *Hardy*, the plaintiff made one phone call from South Carolina. In the case before it, the plaintiff's acts were (1) executed a coupon in South Carolina requesting a copy of defendant's advertised copper option recommending which plaintiff had learned about from defendant's advertising which reached plaintiff in South Carolina; (2) received the copper option report, the customer agreement and other materials sent by defendant to South Carolina; (3) received telephone solicitation in South Carolina; (4) executed in South Carolina the customer's agreement attached to the exhibit in one of the affidavits; and (5) executed and forwarded from South Carolina a check which plaintiff paid the charges by defendant for the copper option. Clearly, the contacts by defendant with South Carolina in the case at bar are greater than those in *Hardy*. This is a court of *stare decisis*; *Hardy* is the law.

This court refuses to transfer the action to Massachusetts pursuant to 28 U.S.C. § 1404(a).[11] Defendant insists that it would be inconvenient for defendant to have to defend the action in South Carolina. The real test of whether an action should be transferred to another jurisdiction is one of balancing convenience between moving party and the plaintiff. Plaintiff has chosen his forum, thus, in applying the balancing test, is not enough for defendant to show that it merely would be inconvenienced by defending in plaintiff's choice of forum, not if the inequities lean slightly in his favor.

Defendant must make a clear cut showing that the balance of convenience in the interest of justice favor trial in the transferee forum. *First National City Bank v. Nance*, 437 F.Supp. 184 (D.C.N.Y.1975); *Smith Contract Co., Inc. v. Travelers Indemnity Co.*, 467 F.2d 662 (10th Cir. 1972); *Radiation Researchers, Inc., v. Fisher Industries*, 70 F.R.D. 561 (W.D.Okl.561).

There is an insufficient showing that the production of documents, etc., as well as the claim that bringing the witnesses to South Carolina would be such an inconvenience as to warrant the transfer to Massachusetts. It occurs to the court that we have had no discovery in this case so the court is not fully advised on the entire nature of the action, the amounts involved, etc. It may be that discovery will lead to information which would give this court more of a picture of the entire case.

The motion for entry of default is denied.

The motion to dismiss is denied.

The motion to change the venue is denied, and the defendant will answer within twenty (20) days from the filing of this Order. Nothing herein contained shall prevent any party from renewing any motion previously made, or filing further motions as provided by the rules.

Discovery is to run 110 days from the filing of this Order. A status hearing will be scheduled by the court within a reasonable time.

AND IT IS SO ORDERED.

---

11. Movant under Section 1404(a) has the burden of establishing that the suit should be transferred. Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.